# THE PEOPLE EX REL. BENJAMIN MORGAN, APPELLANT, *v.* R. Y. HAYNE ET AL., RESPONDENTS.

CONSTITUTIONAL LAW — SUPREME COURT COMMISSIONERS — JUDICIAL POWER.
—The act of February 15, 1889, providing for the appointment by the supreme court of five commissioners, to be known as commissioners of the supreme court, to assist the court in the performance of its duties, under such rules and regulations as the court may adopt, is constitutional and valid, and does not vest such commissioners with judicial power. The power to examine causes and report facts or conclusions to the court for its judgment is not judicial. It is the inherent power not only to decide, but to make binding orders or judgments which constitutes judicial power. The whole exercise of the judicial power is by the court, the commissioners acting only in an intermediate capacity, as auxiliary to the court in the ascertainment of certain facts and law necessary to its enlightenment in giving the proper decision and judgment.

ID. — INFLUENCE OF COURT. — The objection that the commissioners may by their reports and opinions improperly influence the court in the rendition of its judgments does not go to the constitutionality of the law.

ID. — PRESUMPTION IN FAVOR OF CONSTITUTIONALITY OF STATUTES. — Every presumption is in favor of the constitutionality of legislative enactments. One who assails the constitutionality of a statute must not only overcome the strong presumption in favor of its validity, but must show that by the natural and necessary import of the language it is clearly in conflict with the supreme law. Doubt as to the construction of a statute must be resolved, if possible, in harmony with the constitution.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General Johnson,* for Appellant.

*S. M. Wilson,* and *John Garber,* for Respondents.

Fox, J.—This case comes to us on appeal from the superior court of the city and county of San Francisco. It is one of such commanding public importance, involving as it does, the course of procedure in and validity of many of the judgments rendered by this court, that upon motion it has been advanced on the calendar, and is given precedence in the order of determination.

It is a proceeding against the defendants, R. Y. Hayne, H. S. Foote, I. S. Belcher, J. A. Gibson, and P. Vanclief, the commissioners of this court, to inquire "by what authority they claim to exercise any judicial powers within the state of California, and particularly of considering and determining cases on appeal to the supreme court of said state."

The complaint charges,—1. That the defendants are exercising the office of judges of the supreme court of the state of California, and as such claim the right to and do pass upon cases appealed from the superior courts of the state to the supreme court, and decide the same by virtue of their appointment as supreme court commissioners; 2. That the act of the legislature creating the commission, approved March 12, 1885, and the acts amendatory of and supplementary thereto, are contrary to the provisions of article 6, sections 1, 2, 3, and 4 of the constitution of the state of California, and are null and void; 3. That the only authority of the defendants to consider and pass upon appeals to the supreme court is by virtue of their appointment as commissioners and the authority conferred under and by virtue of said acts; 4. That they and each of them are usurping the office of supreme judge of the state of California, and exercising the judicial powers of the state, vested solely in the supreme court by the constitution and laws of the state; and 5. That their only claim so to do is by virtue of their appointment under the acts of the legislature aforesaid.

The defendants answer, denying that they, or either of them, claim, or have ever claimed, or that they, or either of them, have ever exercised, or are now exercising, the office of judges of the supreme court; that they, or either of them, as such, or otherwise, claim the right to or do pass, or have ever passed, upon cases, or any case, appealed from the superior court to said supreme court, or to decide, or have decided, the same, by virtue of their appointment as supreme court commissioners, or

otherwise; deny that they, or either of them, claim, or have ever claimed, the right or authority to hear or determine causes, or any cause, on appeal from the superior court to the supreme court; deny that they, or either of them, do claim, or have ever claimed, the right to exercise any judicial power within the state; and deny that they, or either of them, are, or ever have been, usurping the office of supreme judge of the state of California, or exercising any judicial office or function whatever. They further aver that they are commissioners appointed under the act of the legislature approved February 15, 1889, to provide for the appointment by the supreme court of five commissioners, to be known as commissioners of the supreme court, etc., and that the only work which they, or either of them, perform, or claim the right to perform, or have ever performed, or claimed the right to perform, by virtue of their appointment, or otherwise, consists in the preliminary examination of the records and briefs in cases referred to them by the supreme court, or the justices thereof, and of the authorities cited in such briefs, and in the making to the court and the justices thereof of written suggestions and opinions of the defendants, or some of them, as to the proper disposition of said causes so referred as aforesaid, for the consideration of the said court and justices in the determination and disposition of said causes by said court and the justices thereof; that said suggestions and opinions have no force or effect whatever as judgments or decisions, nor are they filed or recorded as such; that neither of the defendants, or any of them, ever enter or direct any judgment or decision whatever in any case whatever, or ever have entered, or caused to be entered, any judgment, order, or decision whatever, in any case whatever, or ever claimed the right so to do; that neither they, or any of them, do perform or exercise, or ever have performed or exercised, any other function than as above stated.   They further deny that they, or either of them,

hold, or claim to hold, their positions as such commissioners under the said act of March 12, 1885, or any act amendatory thereof or supplementary thereto.

On the issues thus framed, trial was had, resulting in a judgment in favor of the defendants, and dismissing the action. Motion for a new trial was made, and heard upon a statement of the case, and denied, when plaintiff appealed from the judgment, and from the order denying the motion for new trial.

Upon the record, and as the case is presented in this court, there are but two questions for consideration: 1. Is the act under which it is conceded that these defendants were appointed—the act entitled "An act to provide for the appointment by the supreme court of five commissioners, to be known as commissioners of the supreme court, and to appoint a secretary therefor, to relieve said court from the overburdened condition of its calendar, and to provide for the compensation of said commissioners and secretary, and to appropriate money therefor," approved February 15, 1889 (Stats. 1889, p. 13)—in conflict with the constitution? 2. Are the defendants usurping powers not conferred by the act?

1. The first section of the act is the only one which needs to be considered in the discussion of either of these questions. It reads as follows: —

"Sec. 1. The supreme court of the state of California shall immediately upon the expiration of the term of office of the present supreme court commissioners appoint five persons of legal learning and personal worth as commissioners of said court. It shall be the duty of said commissioners, under such rules and regulations as said court may adopt, to assist in the performance of its duties and in the disposition of the numerous causes now pending in said court undetermined. The said commissioners shall hold office for the term of four years from and after their appointment, during which time they shall not engage in the practice of the law. They shall

each receive a salary equal to the salary of a judge of said court, payable at the same time and in the same manner. Before entering upon the discharge of their duties, they shall each take an oath to support the constitution of the United States, and the constitution of the state of California, and to faithfully discharge the duties of the office of commissioner of the supreme court to the best of their ability. The said court shall have power to remove any and all members of said commission at any time by an order entered on the minutes of said court, and all vacancies in said commission shall be filled in like manner."

This section contains all that there is in the entire act on the subject of the powers or duties of the commissioners. Every presumption is, as is the case with all legislative enactments, in favor of the constitutionality of the provision. It was enacted by a senate and assembly, every member of which was sworn to support the constitution, and is presumed to have passed his judgment to the effect that it is not in conflict with that instrument. It was approved by the chief executive, who was under like obligation, and whose judgment is usually exercised with even more deliberation than can be had in the hurry and confusion often attending upon the action of legislative bodies. The judgment of these two great departments of the government is not to be lightly disregarded or turned aside. Yet it is the province of the judicial department to finally determine the question of the constitutionality of this or any other statute law whenever a litigant shall challenge the judgment of the other departments, and appeal to this for that final determination. It is also the duty of the judicial department, of its own motion, to pass upon and determine this question for itself whenever it is called upon to act in the exercise of its own jurisdiction under a statute like the one under consideration. This court was so called upon to act when, on the thirteenth day of May, 1889, it ap-

pointed these commissioners, under and in conformity with the provisions of said act of February 15, 1889. By the very act of appointment, it, by necessary implication if not by direct ruling, held the act to be a valid law under the constitution. And this holding was not without direct precedent, even in this state, and under the present constitution. Under a similar act, approved March 12, 1885, this court as then constituted appointed a commission for a like purpose and with like powers, consisting of three members, and by such appointment recognized the act as a valid law under the constitution. From that time until the creation of the present board, under the act of 1889, the commissioners so appointed exercised all the functions that are authorized to be exercised or are in fact exercised by these defendants under the said act of 1889. That commission and the present one have, unchallenged, assisted the court in the examination and preparation for decision of over a thousand cases, wherein the judgments were *coram non judice,* if it be true, as claimed by the relator, that the act authorizes the commissioners to exercise functions, and they have exercised functions, judicial in their character, and which by the constitution are conferred alone upon the justices of this court. To reverse a construction which must of necessity have been given to these statutes before or at the time of the appointment of these commissioners, and which has been acquiesced in for so long a time, and thereby produce such a result as would follow such reversal, is a thing which ought not to be done by any court, unless there is found the gravest necessity for doing it. If the question of the constitutionality of the act was even doubtful, after such a lapse of time and such a practice under the act, the doubt ought to be resolved in favor of its validity, and the case be left to rest on the doctrine of *stare decisis.*

But to our minds there is *no doubt* about the validity

of the statute. In the language of the court below: "The act in question is not open to objection of a constitutional character. In order to bring it into conflict with the constitution, a strained construction of its words becomes necessary, as well as an utter disregard of the natural import of those words. . . . . The phrase 'assist the court' must, for the purpose of creating a conflict, be understood not merely to facilitate the court, — which is the natural import, — to lessen its labors, but beyond this, to assume the exercise of, or a participation in the exercise of, the appropriate function of the court to decide causes; that the commissioners are to take part in that decision as the members of the court themselves take part in it; in short, it is necessary to say that 'assistance' means 'supersession.'"

Nothing in the language used, or in its context, will justify any construction which will bring the provisions of this act in relation to the powers or duties of the commissioners in conflict with any provision of the constitution. If the language employed was capable of two or more constructions, any one of which would be in harmony with the constitution, it would be our duty to give it that construction. But fortunately, we are not driven to the selection of one of several possible constructions. There is but one "warranted by the natural import of the language employed." One who attacks the constitutionality of such an enactment must not only overcome the strong presumption in favor of its validity, but he must show that by the natural and necessary import of the language it is clearly in conflict with the supreme law. That has not been, and cannot be, done in this case. Not only is there an entire failure to confer judicial power upon these commissioners, but there is also an entire absence of an attempt to interfere with the exercise of the power conferred by the constitution upon and belonging to the judicial department of the government. The legislature has provided for the appointment

and compensation of these commissioners; they are given no power except to "*assist the court*," under such rules and regulations as it may adopt, in the performance of its duties. The great burden of the work of this court is that which is necessarily done in sifting the causes to ascertain from the mass of matter brought here in each case the truth and the law bearing upon it, preparatory to the processes of adjudication and judgment. To say that the court cannot be assisted in this preliminary work by men sworn to fidelity, learned in the law, unconnected with and unbiased in the causes, is to deny us unbiased assistance in the very direction in which we are bound to receive it, and do receive it, in every cause that comes before us, from counsel not equally free or likely to give us unprejudiced opinions and statements; and to deny us such assistance as courts of every grade have been accustomed, time out of mind, to receive, without objection, in this country and in England. It is no more unconstitutional for this court to receive such assistance from commissioners designated by itself, or from *amici curiæ,* than to accept similar assistance from the statements of fact and arguments of the counsel in the cause. As well might it be said that section 266 of the Code of Civil Procedure, which provides that the secretaries and bailiffs of this court shall hold their offices at the pleasure of the justices, and "shall perform such duties as may be required of them by the court or the justices thereof," is unconstitutional, and conferred upon those officers judicial power.

"The power to hear [examine] causes and report facts or conclusions to the court for its judgment is not judicial within the meaning of the constitution." (*Shoultz* v. *McPheeters,* 79 Ind. 378.) "No action which is merely preparatory to an order or judgment to be rendered by some different body can properly be termed judicial. . . . . It is the inherent authority not only to decide but to make binding orders or judgments which consti-

tutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on the persons or things only through its action and by virtue of it." (*Underwood* v. *McDuffie*, 15 Mich. 361.)

The only case cited by the relator in support of his argument against the constitutionality of this act is that of *State* v. *Noble*, 118 Ind. 350; 10 Am. St. Rep. 143. While this case, or that of any other state court of last resort, is not binding as authority upon this court, it would be strongly persuasive if the act of the legislature under consideration was not so unlike our own as entirely to defeat the purpose for which it is cited here. There, as here, the legislature provided for the appointment of a commission to assist the supreme court in the performance of its duties. But there it provided that the legislature should appoint the commissioners, and in case of vacancy in the commission the same should be filled by appointment made by the governor, thus taking away from the judicial department the power to select its own assistants, and thrusting upon the court men selected by the political and executive departments of the government. Chief Justice Elliott, who wrote the opinion, is widely and favorably known, not only for his legal learning and ability, but for the tenacity with which he insists upon the independence of the several departments of the government and resents any encroachment upon the powers and rights of the judiciary. The only question upon which he was called upon necessarily to decide in the case was as to the right of the legislature to appoint, or to provide for the appointment by any other officer than the court itself, of commissioners who should act as assistants to the court in the performance of its duties. This question he discusses ably, and finally declares: "It cannot be doubted that judicial power includes the authority to select persons whose

services may be required in judicial proceedings, or who may be required to act as the assistants of the judges in the performance of their judicial functions, whether they be referees, receivers, attorneys, masters, or commissioners. . . . . As the judicial power embraced the authority to select 'ministers and assistants' at the time the constitution was adopted, that right was sanctioned and confirmed; for it was the power then existing that was so carefully and fully vested in the courts. It was, as we have shown, a well-known and fully recognized principle that courts should, as part of the judicial power, have the right to choose their own assistants, and the constitution has secured and confirmed that principle beyond the power of the legislature to shake it."

The court then discusses other features in the act, not found in our own, conferring upon the commissioners certain powers not conferred by our act, and which in their nature constitute a part of the judicial power of the court; and in view of these several features holds the act to be unconstitutional. But as we read it, there is nothing in the decision to indicate that the act here under consideration would have been held by that court to be in conflict with the constitution, or that the legislature might not provide for the court itself appointing commissioners to assist it or its justices in the preliminary and preparatory work necessary to the final adjudication and determination of the causes before it.

2. In the investigation of the second question involved, one of the justices of this court longest in commission, —one who has been upon this bench ever since the organization of the court under the present constitution, —and one of the commissioners longest in service, were called and examined as witnesses, and it was agreed that the other justices and commissioners would testify substantially the same way.

From the testimony thus elicited it was distinctly and clearly shown that the answer of the defendants was and

is true,—that they do not usurp the functions of judges of
this court, and do not exercise any judicial power what-
ever. They receive, not from the clerk,—for they have no
communication with him,—but from the secretaries of
the court, such of the transcripts and briefs as the court
shall have assigned to them, and make a critical exam-
ination of the transcripts, briefs, and of the authorities
cited by counsel, and report to the court the result of
such examination, with their opinion thereon, accom-
panied with a citation of the authorities, and also with
frequent references to folios of the transcript, to aid the
court in its investigations. These reports and opinions
have no force or effect whatever as judgments of the
court,—do not go to the clerk, but through the secreta-
ries come back to the judges, and they never reach the
office of the clerk of the court, or become in any manner
public, unless, upon examination by the justices them-
selves of the record, the briefs, and the opinions so fur-
nished by the commissioners, they are approved and
adopted by a constitutional number of the justices, and
the judgment of the court is ordered in conformity there-
with. Many of these reports and opinions are never
approved, and never see the light. Others of them are
used in part, and only in part. In every case, when the
judgment is rendered, it is the judgment of the court,
and not of the commissioners. Nothing originates be-
fore these commissioners, and nothing terminates with
their labors or their opinion. The conclusions to which
they arrive are but opinions submitted for our adoption,
if we think they are founded in reason and law. Hence
their reports and opinions are neither decisions nor
infallible guides, but they are serviceable instrumen-
talities to aid us in performing our functions. The com-
missioners exercise no power *proprio vigore.* The court
acquires the jurisdiction, and the court renders the judg-
ment upon the controversy; therefore the whole exercise
of the judicial power is by the court, the commissioners

acting only in an intermediate capacity, as auxiliary to the court in the ascertainment of certain facts and law necessary to its enlightenment in giving the proper decision and judgment.

Another objection urged against this commission is, that the reports and opinions of the commissioners are likely to or may have an undue influence on the court or the justices thereof in their subsequent consideration of the cases, and in the rendition of judgments thereon. A complete answer to this, so far as this action is concerned, is, that if it has any force as an objection, it is not the fault of the act, but of the court. It does not go to the question of the constitutionality of the law, nor does it tend to show that the commissioners are usurping judicial power. Neither do we see any good reason to apprehend that a careful and impartial collation of the facts and points in a case, with references to the transcript for the verification thereof, made by men skilled in that service, and entirely unbiased and uninterested in the cause, accompanied by an expression of opinion as to the law and reference to the authorities to sustain it, as well as a reference to the authorities claimed to be adverse to such opinion, is any more likely, or even as likely, to improperly influence the court in arriving at a judgment, as a similar service rendered by retained counsel, acting under the spur of retainer, and in the direct interest of their clients. And such assistance the court is constantly bound, under the law, to receive, and give to it most careful consideration. If this objection has any foundation in fact, it addresses itself to the legislature, and not to the court.

The judgment and order appealed from is affirmed; and it is further ordered that the *remittitur* herein issue forthwith.

McFARLAND, J., SHARPSTEIN, J., THORNTON, J., and PATERSON, J., concurred.

Beatty, C. J., concurring.—I concur in the judgment
of affirmance, and in most of the reasoning of Justice
Fox's opinion, but I do not think that a determination
now that the act in question is unconstitutional would
have the effect of invalidating judgments heretofore ren-
dered in cases referred to the commission, and based
upon their opinion or report. Therefore I do not rely at
all upon the doctrine of *stare decisis* as a ground of my
conclusions.

And I do not agree that there is nothing in the opin-
ion of Judge Elliott, in the case of *State* v. *Noble*, 118
Ind. 350, 10 Am. St. Rep. 143, to indicate that he
would have held our act unconstitutional. On the con-
trary, he expresses views from which, in my opinion,
such a conclusion must follow, but I do not assent
to his views. It seems to me that the point at which
he goes wrong is where he declares that the duty of *writ-
ing* its opinions is specifically imposed upon the supreme
court by the constitution. If I held to this view, I
confess I could see no escape from the conclusion that
the duties we assign to our commissioners, and which
are performed by them, involve a delegation by us and
a usurpation by them of judicial functions.

But I see nothing in the language of the Indiana con-
stitution, as quoted by Judge Elliott, and nothing in the
language of our own constitution, to warrant the conclu-
sion that the writing of opinions is specifically imposed
upon the members of the court.

The precise language of our constitution is as follows:
"In the determination of causes, all decisions of the
court in Bank or in Departments shall be given in writ-
ing, and the grounds of the decision shall be stated."
(Art. 6, sec. 2.)

In order to comply with this injunction, it is undoubt-
edly necessary that the court, or some member to whom
the duty is assigned, shall in most cases prepare a writ-
ten opinion, but there may be, and in fact are, many

cases in which the labor of formulating a statement of the grounds of the decision has been performed in advance or may be properly delegated to others.

It not infrequently happens that the judge of the superior court prepares an opinion fully covering every proposition involved in a case, and that his opinion is found to be in all respects correct. In such cases there is certainly no necessity for the preparation of a new opinion here, which could differ in form only from the opinion of the trial judge. On the contrary, this court may, and frequently does, adopt the opinion of the trial judge as its own, and for the reasons therein stated affirms the judgment or order appealed from. (*Burrell* v. *Haw*, 48 Cal. 223; *Meredith* v. *Board of Supervisors*, 50 Cal. 433; *Williams* v. *Williams*, 73 Cal. 101.) Many similar instances might be cited from the reports of this and other states, and in this case we might well have adopted the opinion of Judge Wallace of the superior court as the grounds for affirming his judgment.

Sometimes a proposition covering the whole or one or more branches of a case is found to be so aptly and correctly stated in the printed argument of counsel that the court can do no better than to adopt it as the ground of its decision. (*Sneath* v. *Griffin*, 48 Cal. 438; *Brown* v. *Burbank*, 64 Cal. 101.) Can it be said that this is a violation of the constitution? I certainly think not. The object of the constitutional requirement is not to compel the judges to formulate opinions in their own language, but to put upon record the grounds of their decisions for the guidance of the public in their business transactions.

The cases which are referred by us to the commission are those which are fully presented on the papers. The object of the reference is to obtain a report containing a brief and logical statement of the material facts exhibited by the record, and of the legal propositions upon which the judgment depends. When that report is sub-

mitted in the form of an opinion by one or more of the commissioners, with a suggestion that for the reasons stated a particular judgment should be given, it then becomes the duty of the court to compare the report with the record and with the printed arguments of counsel, and to determine for itself whether the reported opinion ought to be adopted, modified, or rejected. If upon such examination the court finds that the facts and the law have been correctly stated by the commission, and it adopts the opinion as its own, the case is not different from those in which the opinion of the trial judge is adopted. The court, though not the author of the opinion, by adopting it, makes it its own.

"But," it is asked, "if the court, after receiving the report of the commission, re-examines the case for itself, what is the use of the commission? It saves the court no labor, and does nothing to facilitate the disposition of causes."

This is a wholly mistaken assumption. The examination of the record of a case and the argument of counsel, for the purpose of ascertaining the material facts and the law bearing upon them, is a very large part of the labor of decision, but it is by no means all. There are some persons in whom the literary faculty is highly developed, to whom the writing of opinions may be a trifling task; but I apprehend that, according to the experience of most judges, the putting of their opinions in form, even after their minds are fully made up, is a very serious labor, requiring the expenditure of a large portion of the time at their disposal.

By the labors of the commission, this time and much serious labor is saved to the court in a large proportion of the cases referred to them, without any abdication or delegation by the court of its constitutional functions.