## DE VOTIE, BULLOCK ET AL. V. MCGERR.

1. SUPREME COURT COMMISSION — CONSTITUTIONALITY OF ACT PROVIDING — PETITION FOR REHEARING.— The constitutionality of the legislative act providing for a supreme court commission is not necessarily involved upon the petition for a rehearing of a cause which had been referred to the commission in pursuance of said act.

2. DISPOSITION OF COURTS IN REGARD TO DECIDING CONSTITUTIONAL QUESTIONS.— Courts ordinarily decline to determine the constitutionality of legislative enactments in a case where the record presents some other and clear ground upon which the judgment may rest.

3. THE SUPREME COURT NOT AUTHORIZED TO ADOPT, PRO FORMA, THE OPINIONS OF THE SUPREME COURT COMMISSIONERS.— The supreme court alone can promulgate opinions and render judgments, and its duty is not discharged by the adoption *pro forma* of the conclusions of the supreme court commission.

4. RIGHT OF ORAL ARGUMENT IN SUPREME COURT.— The privilege of being heard orally before the supreme court prior to final judgment is a right which, though subject to reasonable regulation, cannot, under our practice, be denied to any party litigant making seasonable application therefor.

## On Petition for Rehearing.

THE provisions of the act of the general assembly specially referred to in the opinion are as follows: Act of April 1, 1889: " Sec. 2. Said commissioners shall be

subject to such rules and orders as the supreme court shall from time to time adopt for their government, and for procedure before them.   They shall examine and consider together and report upon such cases as shall be referred to them by the court for that purpose, and perform such other services as the court shall require.   Their reports shall be in writing and signed by one of their number, and shall show which concur therein, and which, if any, dissents, and a dissenting commissioner may likewise make a report.   Every report shall contain a concise, but comprehensive, statement of the facts in the case, the opinion of the commissioner or commissioners submitting the report, and a citation of the authorities relied on in support of the opinion.   The court may provide by rule for a hearing of an oral argument by counsel before said commission: *provided*, that no cause shall be referred to said commissioners in which they, or any of them, are or have been interested as counsel or otherwise.

"Sec. 3.   Every opinion shall be promptly delivered to the chief justice, who shall lay the same before the court.   The court may approve or modify or reject any such opinion.   Whenever it shall approve and adopt an opinion as submitted or as modified, the same, as approved and adopted, shall be promulgated as the opinion of the court, and shall be filed and reported, and judgment shall be rendered in the same manner, and with the same effect, and subject to the same orders, motions and petitions for rehearing as in the case of other opinions and judgments of the court; and every such opinion shall show which commissioner prepared the opinion, and which concurred, and the approval and adoption, and by the concurrence of which judges; and, whenever the court shall reject the opinion of the commissioners in any cause, the opinion of the court shall be prepared, and a like proceeding had in all respects as in other causes submitted to the court."

Messrs. MORRISON & FILLIUS, GEO. H. KOHN and HUGH BUTLER, for appellants.

Messrs. C. C. POST and L. C. ROCKWELL, for appellee.

Opinions were delivered by the members of the court as follows:

MR. JUSTICE ELLIOTT.    This cause was brought to this court on appeal from the district court of Clear Creek county, and, being regularly pending here, was, in pursuance of the act of April 1, 1889 (Sess. Laws, 444), referred to the supreme court commissioners to examine and consider.    After an oral argument before the commissioners they reported an opinion advising that the judgment of the lower court be affirmed.  That opinion was, upon consideration by this court, approved, adopted and promulgated as its opinion, and judgment of affirmance was rendered thereon.    In this the provisions of the act mentioned above were regularly pursued.    The order of reference was open and known to the parties through their respective counsel.    Opportunity was given for a full hearing of the cause before the commission upon the whole record, orally as well as by the printed arguments of counsel on file; but the parties did not have an opportunity to be heard orally before the court, either in person or by counsel, prior to the decision of the case, nor did they have an opportunity to make objections or exceptions to the opinion as reported by the commissioners until after the same was approved and promulgated as the opinion of this court.    Among other grounds upon which a rehearing is now asked is the following:  "The counsel for appellants desire to argue the validity of an opinion of the supreme court in the form of an indorsement or ratification of the commission based on an oral argument heard before the commission.'

By the briefs and arguments of counsel, questions relating to the constitutionality of the act providing for a

supreme court commission are presented for the first time in this court.   These questions being of general interest, and of the highest public concern, we have deviated from the usual practice in respect to petitions for rehearing, and, after hearing oral arguments and considering the printed briefs presented upon both sides of the controversy, have concluded to file opinions in writing, so that our views upon the subject may not be misunderstood.

Questions relating to the constitutionality of supreme court commissions have recently been considered by the supreme courts of several states.   In Indiana, the question having been presented to the court by a writ of prohibition, Chief Justice Elliott, in an elaborate opinion, concurred in by the whole court, declared the act of the legislature creating such tribunal unconstitutional.   In California the proceeding was by *quo warranto*.   Learned opinions were delivered by Chief Justice Beatty and by Mr. Justice Fox sustaining the commission.   It will be observed, however, that the constitutions, as well as the legislative acts of the two states, differ from each other in some particulars, and also that in both these proceedings the commissioners were made respondents.

In Kansas the question arose as follows: A case pending in the supreme court upon writ of error had been referred to the commissioners, who, after hearing oral argument, prepared an opinion, which, upon due consideration by the court, was promulgated as its opinion. The defeated party sought by motion to obtain a rehearing upon the ground, as alleged, that a hearing had not been had before the supreme court; that the hearing before the commissioners was without force or effect; that the commission was unconstitutional; and that the parties had been deprived of a hearing before a duly constituted and legal court.   The Kansas court was divided in opinion upon this motion, though the majority of the court, speaking by Mr. Justice Valentine, in a well-con-

sidered opinion, refused to consider the question of the constitutionality of the act, and, passing upon the merits of the case, denied the rehearing.   Chief Justice Horton, however, in a dissenting opinion of rare ability, contended that it was the denial of an "inestimable right" to deprive a suitor of an oral argument before the court prior to rendering final judgment.   *State v. Noble* (Ind.), 21 N. E. Rep. 244; *People v. Hayne* (Cal.), 23 Pac. Rep. 1; *Railroad Co. v. Abilene* (Kan.), 21 Pac. Rep. 1112.

Upon careful consideration, we conclude that the constitutionality of the legislative act providing for a supreme court commission is not necessarily drawn in question by the petition for a rehearing, so we shall not express any opinion concerning its validity.   Our reasons for this course are well expressed in the language of an eminent author on constitutional questions as follows:

"It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously, and with due regard to duty and official oath, decline the responsibility.   *   *   *   Neither will a court, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause.   'While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics.   They will not seek to draw in such weighty matters collaterally, nor on trivial occasions.   It is both more proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota*.   Thus presented and determined, the decision carries a weight with it to which no extrajudicial disquisition is entitled.'   In any case, therefore, where a constitu-

tional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable." Cooley, Const. Lim. 159, 163.

Though it is deemed inexpedient to determine the constitutionality of the act creating the commission in this proceeding, yet the constitutional duties and obligations of this court to litigants are directly involved; and, in order to pass upon the questions fairly within the purview of a petition for a rehearing, it seems necessary to consider to some extent the nature of the supreme court commission, and the character of its work in connection with the hearing and disposition of causes in this court. The vital question is, Are the rights or privileges of parties in any manner denied or abridged by the reference of their causes to the commission, and the proceedings consequent thereon? The question is one of much difficulty.

Article 3 of our state constitution divides the powers of the · government into "three distinct departments," and forbids any encroachment by one department upon another. By the provisions of article 6 of the constitution, we find that "the judicial power of the state" is vested in the courts; that "appellate jurisdiction" is vested in the supreme court; and that "the supreme court shall consist of three judges." While these constitutional provisions remain unchanged, the rights thereby secured cannot be destroyed or impaired by any legislative enactment; neither can the number of judges upon the supreme bench be increased, nor can their essential

powers and responsibilities be shared by others. It is unnecessary to enter into a lengthy discussion of these familiar principles.

The first and second sections of article 2 of the constitution express the fundamental principles of our free institutions, to the effect that the powers of civil government are "vested in and derived from the people" of the state, subject to the constitution of the United States. The people of this state by their constitution have vested in the judicial department of the government all the judicial power they had to give, with a few specified exceptions; and have made the same exclusive, thus making the judiciary co-ordinate with the legislative and executive departments. The supreme court belongs to the judicial department. It derives its existence, organization, powers and jurisdiction from the constitution. The supreme court commission is of legislative creation. The act providing for the commission requires that the commissioners "shall possess the same qualifications" as judges of the supreme court, and that they shall examine, consider and report opinions upon "such cases as shall be referred to them by the court for that purpose;" yet it is clear that they cannot, by mere legislative authority, be invested with those powers which have been committed to another tribunal, under and by virtue of a constitution which declares that the powers properly belonging to one department shall not be exercised by either of the others.

Without undertaking to determine the exact line of demarkation between those governmental powers which are judicial in their nature and those which are not, it is clear that the exercise of judicial power comprehends something more than the use of the perceptive and reflective faculties by which legal conclusions are deduced from the facts of a case. Such acts are intellectual and preliminary. The plenary exercise of judicial power calls into activity also the other attributes of the mind,—

the sensibilities and the will.   The deliberate assumption of responsibility; the authoritative expression of legal conclusions in declaring the sentence of the law; the pronouncing of judgment in open court in the presence of those who are to be affected thereby, so as to bind and control persons and property; the protection, and sometimes the loss, of life and liberty, as well as the character and fortunes of individuals; the establishing of precedents which may affect the most cherished rights of persons and property for all time,— all these are often involved in the exercise of judicial power, and serve to illustrate its importance.   Such powers cannot be wisely exercised, except by those who personally avail themselves of every opportunity to guide their judgment. They cannot be lawfully exercised, except by those intrusted therewith by the people under the constitution.

While the commissioners, in the performance of their work, are required to consider questions of a judicial nature, and to express their opinions thereon, still their opinions must be considered and approved by the judgment of the court, so as to become essentially the opinions of the court, before they can be considered in any proper sense judicial opinions.   The work of the commissioners is in some respects like that of counsel, with this important distinction: that the commissioners are sworn to faithfully and impartially discharge their duties as paid officers of the state, so that, in considering their work, we do not have to make allowance for the bias or prejudice which partisan feeling, self-interest and paid zeal are calculated to inspire.   The difference between the argument of counsel and the decision of the court is easily comprehended.   The former may be replete with as much or more legal learning than the latter; it may be the result of as much or more exercise of the reasoning faculties; it may show as much or more legal discrimination and sound judgment; it might, if followed, lead to as good or even better results in the administra-

tion of the law in a given case; but the argument of counsel lacks the force and power of the judicial decision, in that it is not pronounced by one clothed with judicial authority under the constitution to give effect to it as a judgment of the court. See opinion of the present chief justice of this court in *Haverly Invincible M. Co. v. Howcutt*, 6 Colo. 574.

It follows, from foregoing views, that every litigant having a cause properly pending in this court is entitled to have the same fully considered and determined by the court itself; that is, by the supreme court, established and vested with judicial power under the constitution. Every such litigant also has the right to have his cause heard by the court itself upon oral or written arguments before final judgment is rendered. It is a matter of common observation that different minds are affected differently by the same arguments, and they sometimes draw different conclusions from the same state of facts. Hence the reference of a cause to the commission may in some instances affect its ultimate determination. The report of the commissioners may bring before the court something which will break the force and effect which the briefs or arguments of counsel might otherwise have produced upon the members of the court who are to decide the cause. Such a result would not be likely to occur in an ordinary case, but, upon evenly balanced or doubtful questions, the strongest minds are more or less influenced by the reasoning of others. Hence, whether a case is referred to the commission or otherwise, it is undoubtedly the duty of the court to consider the whole case before promulgating its final opinion. In case of a reference, the whole record, including the briefs and arguments of counsel, must be considered in order that the opinion reported by the commission may be intelligently "approved, modified or rejected." It is for these reasons that this court has strenuously resisted all importunities to approve and promulgate the opinions of

the commissioners *pro forma* in the first instance without consideration. The constitutional rights of the parties require that the opinion, by whomsoever prepared, shall be approved and adopted *by the court* before it is promulgated as the opinion *of the court*.

Whether the legislature can control the judicial department, so far as to require that any cause or number of causes pending in this court shall be referred to the commission, thereby imposing upon the court the duty of examining and considering the opinions reported by the commission; also whether the legislature can require opinions reported by the commission to be promulgated in any particular form or manner, in case of their approval and adoption,— are questions which need not now be determined. But, in view of what has been so strongly urged concerning the "indorsement or ratification" of commissioners' opinions and the importance of "oral arguments," some expression seems to be called for concerning the views and practice of the court in this regard, for the information of all concerned. It is proper, therefore, to state that this court is now, and always has been, of the opinion that it cannot discharge its constitutional obligations to litigants by the promulgation of any opinion, by whomsoever prepared, without first being satisfied of the correctness of the opinion in all substantial particulars; and also that the privilege of being heard orally before the court prior to final judgment is a right which, though subject to reasonable regulation by the court, cannot justly be denied to any party litigant making seasonable application therefor. "Hear before you strike," was a maxim of the ancient jurists. Whenever it is necessary that an oral argument should be had in order to a correct understanding and determination of a cause, such necessity is not satisfied by allowing such hearing before the commission; the effect of such oral argument cannot be fully appreciated by the court, except the argument be made to the court.

It would seem to be an improvement in the practice if, when an opinion is reported by the commission, any suitor considering himself prejudiced thereby should have the opportunity of making objections or exceptions thereto, and have the same considered by the court itself before final judgment is rendered. Experienced lawyers, as well as judges, know the superior advantage of being heard before judgment is pronounced rather than afterwards. Ordinarily a motion for a new trial or for a rehearing is not equivalent to a full hearing, before the ideas of the judicial mind upon a given case have become settled by the expression of an opinion in writing. There is something in the act of formulating ideas or mental conclusions into words and sentences that strengthens the conviction of the author as to their correctness. Hence the importance of mature consideration before the entry of judgment, especially in a court of last resort. The fact that this court does not perform the literary labor of expressing the views embodied in the opinions of the commissioners is rather favorable than otherwise to the applicant for a rehearing in such cases. Nevertheless it would seem to be more prudent to give opportunity to litigants to examine and make objections or exceptions to opinions reported by the commission before the court undertakes to consider them, so that they may be passed upon in the light of such objections.

Though the matters considered in this opinion have not been heretofore formally presented or discussed by this court, yet it will be observed from what has already been said that they have not been altogether overlooked. In many cases oral rehearings have been allowed, when applied for, on the ground that arguments made orally before the commission could not be fully appreciated by the court.

It may be said that the act providing for a supreme court commission was designed by the legislature to facilitate the disposition of business in this court, and

that the court should not interfere with such object by assuming the burden of reviewing their work in all cases. The unanswerable reply to this is: Constitutional rights of litigants cannot be sacrified to expediency. It is true, this court is overburdened with accumulated business. The reasons for this are obvious. Since the adoption of the constitution Colorado has more than quadrupled in wealth and population, and litigation has increased in a still greater ratio. There are now three times as many district and county courts in existence and in active operation as when the state was admitted, and this court may be required to review every one of their judgments by appeal, writ of error, or other reme-dial writ. Besides, the number of causes of which this court must take original jurisdiction is constantly in-creasing, and yet the number of judges on this bench remains the same. Hence it should not be a matter of surprise, after the lapse of nearly fourteen years, consid-ering the novel and diversified character of the questions presented to this court for consideration, that the court, desiring to decide every case with due regard to the rights of parties and in strict conformity to legal and constitu-tional principles, should be somewhat behind upon the calendar.

It is unnecessary, in my opinion, to consider at this time the other grounds upon which the rehearing is asked. In order that appellants may have an opportu-nity to be heard orally by this court upon the merits of their cause, the petition for a rehearing will be allowed.

*Rehearing allowed.*

MR. JUSTICE HAYT. No question as to the constitu-tionality of the act providing for the supreme court com-mission is either necessarily or properly involved in this determination, and I shall not, therefore, follow counsel in their able and exhaustive argument in this field.

In addition to the reasons given for this conclusion by

Mr. Justice ELLIOTT, in the opinion filed herewith, the fact that the honorable commissioners are not parties to this action should have great weight in support thereof. The commission, as an institution, has now been in existence in this state for upwards of three years, and the public at large may well be supposed to have an interest in the determination of the constitutional question, compared with which this litigation over a few cows sinks into insignificance; and this method of collateral attack ought not now to be encouraged.

In my judgment, the only question in relation to the supreme court commissioners properly before the court upon this motion may be stated as follows: Under the provision of the act of April 19, 1890, in reference to oral arguments, is the duty of this court discharged in cases referred to the commission by providing for an oral argument before that body, or is the party in such cases entitled to an oral argument before the supreme court, before its judgment shall be pronounced? The present act, "providing for a supreme court commission," was passed at the last session of the legislature, and was approved upon the 1st day of April, 1890. A few days later, and at the same session, an act was passed entitled "An act to regulate the terms of the supreme court and the practice therein," which reads as follows:

"Section 1. That in each year there shall be three terms of the supreme court; one beginning on the second Monday in September, another beginning on the second Monday in January, and another beginning on the second Monday in April."

"Sec. 2. The court shall be in open session as often as practicable during each of its terms, to hear and determine matters and causes which may come before it, and oral arguments shall be allowed on final hearing in any cause on the request of any party thereto."

In section 2 of this latter act the right of a party litigant to be heard orally before this court upon request,

before final judgment, is expressly declared. If any-
thing can be found in the statutes which would authorize
a refusal by this tribunal to hear a party orally as above,
it must grow out of the power given the court to provide
by rule for oral arguments before the commission in cer-
tain cases.    The two acts must be considered together,
and effect given to both, if possible.    Such effect can
best be given by holding that the legislature, in employ-
ing the language used in the latter act, intended to put
beyond a dispute the right of a litigant to have his case
orally argued before this court upon final hearing.    It
was then legislating with reference to the body desig-
nated by the constitution as the supreme court.    And
the above conclusion is in accordance with the natural
and obvious import of the language employed.    It can-
not be said that, by referring causes to the commission,
parties can be deprived of the right to a final hearing
before the court.    As conclusively shown in Mr. Justice
ELLIOTT's opinion, the court alone can render judgment,
and its duty is not discharged by the adoption *pro forma*
of the conclusions of the commission.    And to deprive
a party litigant of his right to an oral argument before
this court upon such final rehearing, no matter what op-
portunities may have been accorded him in presenting
his case to the commission, would be a palpable violation,
not only of the terms of the act itself, but would be con-
trary to the uniform practice of this court as promulgated
by rule 27, provided he has seasonably applied for such
oral argument.

In the opinion of the commission in this case, the cor-
rectness of the propositions of law announced in certain
instructions prayed by appellant, and refused by the trial
court, is conceded; the refusal to give such instructions
being justified only upon the ground that they were not
warranted by the evidence.    The correctness of this con-
clusion is contested by counsel.    The point seems to be
in much doubt, and, in my opinion, the court ought not

to refuse any assistance to its correct determination which counsel are willing to give. A stipulation by counsel for an oral argument having been filed more than one year ago, and before the reference, I am of the opinion that a rehearing should be granted, to the end that such oral argument may be made to this court as requested by appellants.

CHIEF JUSTICE HELM. The members of the court are agreed upon two propositions: *First*, that the legal existence of the supreme court commission should not be determined upon the present collateral challenge; *second*, that the rehearing in the case at bar should be allowed upon grounds appearing in the record, and wholly independent of the foregoing or any other constitutional question.

In my judgment, the above announcement is all that should be made at the present time. Having squarely declined to consider the constitutionality of the commission statute, it would seem inconsistent to promulgate an opinion discussing matters pertaining solely thereto. Therefore I must be excused from even tacitly sanctioning such a proceeding, as well as from giving a silent indorsement to irrelevant propositions, the logical sequences from which do not meet my approval. It seems to me, also, that explanations concerning the manner in which this court discharges its constitutional duties would be more appropriate upon some other occasion.

Nor am I now prepared to favor the position taken by one of my associates regarding oral arguments. The conclusion reached is necessarily predicated upon the legislative right to prescribe a court regulation in the premises. The statute relied on is but a repetition of the standing rule of this court in force several years prior to its enactment. This rule the court has always regarded as obligatory, and never, to my knowledge, has an oral argument upon final hearing of a cause been re-

fused, when proper application was made therefor. Henc ›
I must not be understood as in any way questioning the
utility or propriety of the practice. On the contrary, I
am, and have always been, an earnest advocate thereof.
If an oral argument is the litigant's constitutional right,—
a matter upon which I express no opinion,— the statute
does not magnify or strengthen such right. If, on the
other hand, this be but one of the privileges usually ex-
tended in the trial of causes, a statute commanding its
allowance by the court may be an unwarranted depart-
ure from the field of proper legislation. If the legisla-
ture can command the court to hear oral arguments, it
would seem to follow that, if the right be not constitu-
tional, it might *forbid* the hearing thereof; and, if this
be conceded, I do not see why that body may not fix the
time to be consumed by counsel, command or forbid
printed arguments, arrange the order of business, and
make any and all other rules or regulations regarding
judicial proceedings. Undoubtedly, legislation may and
must cover a wide range of subjects, connected directly
or indirectly with judicial action; but that a limit exists
somewhere to legislative power over the manner in which
courts created by the constitution shall perform judicial
duties and conduct judicial business will hardly be ques-
tioned. The supreme court of California has held that
the legislature cannot require its opinions to be reduced
to writing. *Houston v. Williams*, 13 Cal. 24. Doubtless
many other illustrations might be found of instances
where legislative authority in the premises has been de-
nied. But I have said sufficient to explain my reluctance
in approving the major premise, upon which the opinion
in question necessarily rests.

My associates have seen fit to adopt, as a standing rule
of court, a regulation in pursuance of which opinions
of the commission are deposited with the clerk, and
treated to all intents and purposes as reports of referees
in ordinary judicial proceedings. The adoption of this

rule is, to some extent, an outgrowth of the present controversy. It must have been based either upon grounds of expediency or of legal necessity. The efficiency of the plan, whether resting upon one ground or the other, I am led, upon reflection, to seriously doubt. I do not consider whether the rule is consistent with the statute creating a supreme court commission. My misgivings are predicated upon the fear that it will not simplify the disposition of cases, or remove the embarrassment that has heretofore necessarily attended the joint labors of the court and commission. In my judgment, moreover, it is doubtful if any of the alleged constitutional exceptions urged against the organization and work of the commission are thus obviated. But I shall for the present refrain from entering into a discussion of specific objections. The rehearing is allowed.

*Rehearing allowed.*