THE PEOPLE, Respondent, v. ROY HALE, Appellant.

[1] CRIMINAL LAW — ROBBERY — IDENTIFICATION — EVIDENCE.—In this prosecution for robbery, the crime having been committed by two hold-up men who, without masks, peacefully entered the premises in question, and defendant having been arrested the following day upon description furnished by the two victims, the testimony of the latter as to the identification of defendant as one of the robbers was sufficient; and the fact that one of said witnesses was an ex-convict did not establish the innocence of defendant nor stamp the entire story of the robbery false.

[2] ID. — IDENTIFICATION OF DEFENDANT — EVIDENCE — REGULARITY OF METHODS—APPEAL — ASSUMPTION. — In such prosecution, the trial court did not commit error in admitting the testimony of the prosecuting witness that while at the city prison elevator he identified defendant crossing the corridor and called him to the

attention of a detective companion, and that he later picked defendant out of a line-up of twelve or fifteen prisoners; and it will not be assumed on appeal that any irregular methods were used in connection with the visit of said witness to the city prison, nor that the identity of defendant was suggested to him in any improper manner.

[3] ID.—IMPROPER QUESTIONS—MISCONDUCT OF DISTRICT ATTORNEY.— In such prosecution, after the court had ruled against questioning as to the employment of the witness for the defense prior to her immediate employment, it was improper for the district attorney to ask a witness for the defense the question: "Did you ever work down in South City selling drinks?" to which the court sustained an objection, but such conduct did not constitute prejudicial error.

[4] ID.—CHARACTER OF DEFENDANT—IMPROPER REMARKS OF DISTRICT ATTORNEY—INSTRUCTIONS.—In such prosecution, counsel for defendant, during his final argument, having lauded the character of defendant, the act of the district attorney in objecting, saying that the statement made was improper, "coming from counsel, as he knows the facts, and as he knows the defendant in this case," did not constitute prejudicial misconduct, where such remarks of the district attorney were assigned as misconduct and the court thereupon suggested to the jury that statements of both counsel should be eliminated and that, in arriving at a verdict, they must confine themselves to what has been proved.

[5] ID.—IDENTIFICATION OF DEFENDANT — HEARSAY.—In such prosecution, the testimony of a police officer describing the robbers, if given to prove the identity of the accused as the guilty party, was incompetent, where such testimony was based upon a description of the robbers furnished by the victims; but the admission of such testimony did not constitute reversible error where there was other evidence sufficiently identifying defendant.

[6] ID.—OWNERSHIP OF PROPERTY—PLEADING.—In a prosecution for robbery, if the information lays the ownership of the property stolen in someone other than the defendant, it is sufficient.

[7] ID.—FALSE TESTIMONY — INSTRUCTIONS. — In a criminal prosecution, the giving or refusing to give an instruction that "if you believe that any witness in this case has willfully testified falsely in regard to any fact material to the issue you are at liberty to disregard and entirely discard the whole testimony of such witness in arriving at your verdict," does not constitute prejudicial error, unless injury is shown.

[8] ID.—INDETERMINATE SENTENCE LAW—CONSTITUTIONALITY OF.—The indeterminate sentence law is not violative of the fourteenth

8. Power of court to suspend sentence or stay execution of sentence, notes, 8 Ann. Cas. 386; 14 Ann. Cas. 722; Ann. Cas. 1912B, 1192; 33 L. R. A. (N. S.) 112; 39 L. R. A. (N. S.) 242; L. R. A. 1915C, 1169; L. R. A. 1918C, 551.

amendment of the constitution of the United States; neither is it violative of article III, section 1; article VII, section 1; article I, sections 11 and 21; or article IV, section 25, subdivisions 2, 26 and 33 of the state constitution.

[9] ID. — PRESUMPTION OF CONSTITUTIONALITY — BURDEN OF PROOF — CONSTRUCTION.—One who attacks the constitutionality of an enactment such as the indeterminate sentence law must not only overcome the strong presumption in favor of its validity, but he must show that by the natural and necessary import of the language it is clearly in conflict with the supreme law; and if the language employed is capable of two or more constructions, any one of which is in harmony with the constitution, it is the duty of the court to give it that construction.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ernest B. D. Spagnoli for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan and Wm. F. Cleary, Deputies Attorney-General, for Respondent.

ST. SURE, J.—Defendant was convicted by a jury of the crime of robbery. He appeals from the judgment of conviction and the order denying his motion for a new trial.

The points urged for reversal are stated in the opening brief as follows: Insufficiency of identification; error of court in admitting evidence as to identification in city prison; misconduct of district attorney; error in admitting testimony of police officer; error in instructions.

Defendant filed a supplemental brief in which he urges, in addition, that the indeterminate sentence law (Pen. Code, sec. 1168), is unconstitutional and void, because, in effect, a usurpation by the state board of prison directors of the exclusive executive power of the governor to commute sentences or grant pardons, and also as obnoxious to the fourteenth amendment of the United States constitution, and to article I, sections 11 and 21, and article IV, section 25, subdivisions 2, 26, and 33, of the state constitution.

---

9. Constitutionality of statute conferring on court power to suspend sentence, note, 26 A. L. R. 399.

Briefly, the record tells the story of the crime as follows: Two men entered a soft-drink place on Bryant Street, in San Francisco, on October 5, 1922, at about 8:30 o'clock in the evening. The entry was peaceful, there was no immediate display of weapons, nor did either of the men wear masks. One, identified as defendant herein, asked for cigarettes, and when the proprietor turned from getting them, thrust a gun against his body and commanded him to hold up his hands. At the same time his companion pointed a gun at the proprietor's cousin (prosecuting witness herein) who sat at a table near by. The cash register was emptied and each victim relieved of his watch and money. The victims were then shut into a back room and the hold-up men left. About twenty minutes later the robbery was reported to the police officer on the beat. He searched the neighborhood for two suspected hold-up men, failed to find them, and made written report of the robbery about twenty-five minutes after the complaint to him. Defendant was arrested about 6:30 o'clock in the evening of the following day. The prosecuting witness visited the city prison and recognized, while crossing the corridor, the defendant as one of the robbers. Later the same witness picked defendant as one of the robbers out of twelve or fifteen prisoners. At the trial both of the victims positively identified the defendant and gave substantially the same description of the robbers and their dress on the occasion of the hold-up. The defendant was dressed slightly differently at the prison. The defense was alibi, one witness (Mrs. Sheehan) beside himself testifying for the defendant that he spent the entire day and night on which the robbery took place at the home of witness and her husband. She also testified that he spent most of the next day there.

[1] We cannot agree with counsel for defendant that his client was not sufficiently identified as one of the robbers. The evidence shows that the hold-up men peacefully entered the premises. They were unmasked. Defendant was arrested the following day upon description furnished by the victims. The prosecuting witness visited the city prison and recognized the defendant, and both victims, at the trial, positively identified the defendant as one of the offenders. We cannot indulge the presumption, as counsel seems to wish, that the place of the robbery was a bootleg liquor-

shop and the prosecuting witness customer, and his cousin, proprietor thereof, intoxicated with its product. These things were not proved, though defendant's counsel attempted to elicit testimony to that effect at the trial. True, one of the witnesses was an ex-convict, but this does not establish the innocence of one charged with robbing him, nor stamp the entire story of the robbery false. The fact that one witness could not say with certainty that there was or was not wood on the stock of the gun with which he was held up does not blot out the identification of the robbers. That the witness was frightened and excited was but natural, and, under the circumstances, we think he could not be expected to establish that he examined minutely a gun pressing against his body to enforce inactivity, and which was also partially concealed in the hand of the robber.

The jury had the witnesses before them and were given opportunity to pass on the sufficiency of their identification and their general credibility. This court cannot say that the story of the robbery was too improbable for belief by a reasonable person.

[2] The next complaint of defendant is that the court committed error in admitting evidence as to the identification of defendant by the prosecuting witness while in the city prison. It cannot be assumed that any irregular methods were used in connection with the visit of the witness to the city prison, nor that the identity of the defendant was suggested to him in any improper manner. The record discloses only the testimony of the witness, that while at the elevator he identified the defendant crossing the corridor and called him to the attention of a detective companion; that he later picked defendant out of a line-up of twelve or fifteen prisoners. Though counsel for defendant objected to the testimony on the ground that there was no showing of the "ins and outs" or how the line-up was made, and that the identity of the defendant had been suggested to the witness beforehand, he made no particular effort to follow the court's suggestion that these matters could all be brought out on cross-examination, but went instead into an examination calculated to show that the memory and perception of the witness were so weakened by drinking intoxicating liquor that his statements were not to be believed. The jury evi-

dently chose to believe the story of the identification. at the prison as first told by the witness.

[3] Defendant next assigns for reversal misconduct of the district attorney in the asking of defendant's witness the question: "Did you ever work down in South City selling drinks?" to which the court sustained an objection. The question was asked after the court had ruled against questioning as to the employment of the witness prior to her immediate employment. While the question was improper after such ruling and the conduct of the district attorney is not to be commended, we do not think that it was prejudicial. We must assume that the jury disregarded the question when the objection was sustained, and we cannot assume that of two meanings possible to be attached to the question they took a sinister and unlawful one.

[4] Further misconduct is assigned on the part of the district attorney in referring to defendant's counsel and his knowledge of the facts in the case, and of the defendant. Defendant's counsel, during his final argument, proceeded to laud the character of the defendant, saying: "Hale has no police record, has never been in jail before in his life, because if he had they would have produced the record of his arrest." The district attorney objected, saying that such statement was improper, "coming from counsel, as he knows the facts, and as he knows the defendant in this case." The remarks of the district attorney were assigned as misconduct and defendant asked the court to instruct the jury to disregard them. The court then said: "Well, eliminating statements of both counsel, ladies and gentlemen, of course, you have had some experience here and you know that counsel are assumed to talk about the evidence, and not what might have been proven or what might not have been proven. It is what has been proven; that is all you are entitled to discuss here. Go ahead." Defendant complains that this admonishment was insufficient. The retort of the district attorney may have been occasioned by the *facts* adduced at the trial. Defendant admitted that he was not working at the date of the robbery and had not worked at any legitimate business for a long time. He testified: "To tell you the truth, I was in the bootleg business. . . . We was running a still. . . . "

The whole incident may be regarded as within the scope of legitimate argument. And further, it appears, that the court suggested to the jury that statements of both counsel should be eliminated, and that, in arriving at a verdict, they must confine themselves to what has been proved. Under all of the circumstances of the case we believe the defendant was in no way prejudiced by the occurrence, and that the court's admonishment was sufficient.

[5] Error is assigned in the admission of the testimony of a police officer descriptive of the robbers, as hearsay. The record shows there was some confusion as to the date of the commission of the crime. The information charged the sixth day of October and all the parties in the early stages of the case assumed this to have been the correct date. During the trial a police officer was called to clear up this matter. It was finally made clear by the officer's report to headquarters that the crime was committed on the evening of October 5th. The arrest occurred on the following evening, October 6th. The court, over the objection of defendant, allowed the officer to testify that he had a conversation with the victims of the hold-up on the night of its occurrence, that he searched the neighborhood immediately thereafter for two men, and, finally, permitted him to give descriptions of these two men furnished by the victims. The receipt of the complaint by the police officer, and his written report at the time thereon, was an act in the line of his duty and may have been admissible to show that complaint of the robbery was made on that date. The descriptive testimony based on hearsay, if given to prove the identity of the accused as the guilty party, was incompetent. (*People* v. *Johnson,* 91 Cal. 265 [27 Pac. 663]; *People* v. *McNamara,* 94 Cal. 509 [29 Pac. 953].) Had such evidence been the sole proof of identification its admission would clearly have been reversible error. Aside from the complained of evidence there was sufficient direct testimony on the subject, unshaken by defendant, to justify the verdict of the jury. But in view of the rule laid down by our supreme court in the Johnson and McNamara cases, *supra,* it would appear that the action of the trial court in refusing to exclude the hearsay testimony verged on prejudicial error, and we feel constrained to invoke section 4½ of article VI of the state constitution, and

in so doing, we believe, upon a consideration of the entire evidence, the error, if any, was harmless.

Errors are assigned in three instructions. It is asserted that the trial judge omitted a vital element from a part of his charge to the jury, in that he did not state that the property stolen was that of the prosecuting witness, and not the property of the defendant. The court gave a *résumé* of the information, containing the statute definition of robbery, but omitted that part of the information declaring the ownership of the property taken. The court then went on to say, however, "The defendant entered a plea of not guilty, thereby putting in issue all of the material allegations contained in the information *which has heretofore been read to you*. The minutes of the court set out in the record show the following:

" . . . Thereupon the roll of the jury was called and all answered present.

"Thereupon the clerk read the information. . . . "

The copy of the information set out in the clerk's transcript contains the language: " . . . and of the personal property of the said Pasquale Laureti. . . . "

[6] If the information lays the ownership of the property in someone other than the defendant, it is sufficient. (*People* v. *Ammerman*, 118 Cal. 23 [50 Pac. 15].) The entire prosecution was conducted on the theory that the property was that of the prosecuting witness and his cousin, and no contention was made by defendant that this was not the fact.

[7] The second instruction complained of is as follows:

"If you believe that any witness in this case has willfully testified falsely in regard to any fact material to the issue you are at liberty to disregard and entirely discard the whole testimony of such witness in arriving at your verdict."

The instruction complained of is, in effect, a compliance with section 2061, subdivision 3 of the Code of Civil Procedure. (*People* v. *Sprague*, 53 Cal. 491, 494; *People* v. *Clark*, 84 Cal. 573, 583 [24 Pac. 313].) It is settled law that the giving or refusing to give this instruction, unless injury is shown, does not constitute prejudicial error. (*Poor* v. *Fuller & Co.*, 30 Cal. App. 650, 655 [159 Pac. 233].)

The third instruction attacked is one given by the court upon the subject of reasonable doubt. Counsel for defendant quotes only the first sentence of the instruction, and contents himself with saying it is not the law. The court gave a stock instruction which contained a correct statement of the law upon the subject, and the assignment of error is therefore without merit.

[8] The last contention of defendant is that section 1168 of the Penal Code, under which appellant was sentenced, is unconstitutional and void as violative of article III, section 1, and article VII, section 1, of the state constitution. In the case of *In re Lee,* 177 Cal. 690 [171 Pac. 958], the supreme court of this state had under consideration the constitutionality of the indeterminate sentence law, especially as violative of article III, section 1, of our constitution. The court there held that the actual carrying out of the sentence under the law, and the application of the various provisions for ameliorating the same, are administrative in character and properly exercised by an administrative body; that the indeterminate sentence is not a delegation to the prison directors of judicial authority, the judicial branch of the government being intrusted with the function of determining the guilt of the individual and of imposing the sentence provided by law for the offense of which he may have been found guilty; that the act itself, in effect, becomes a part of every judgment, and the state board of prison directors only one of a series of agencies for the execution of the judgment. The conclusion of the court was that the indeterminate sentence law does not violate the constitutional provision such as ours (art. III, sec. 1), providing for a segregation of governmental powers into the three departments—legislative, executive, and judicial.

It is contended that the provisions of the statute are in direct and irreconcilable conflict with article III, section 1, and article VII, section 1, for the reason that they interfere with the exclusive right of the executive to commute or pardon sentences for crime after conviction. The statute (par. d) provides that the governing authority of the prison "shall determine after the expiration of the minimum term of imprisonment has expired, what length of time, if any, such person shall be confined, unless the sentence be sooner terminated by commutation or pardon by the governor of

the state; and if it be determined that such person so sentenced be released before the expiration of the maximum period for which he is sentenced, then such person shall be released at such time as the governing . . . authority may determine.''

Nowhere does the statute give the prison board the right to commute or pardon, nor does it attempt to impair such power reposing exclusively in the Governor; indeed, the statute expressly recognizes that such power remains with the Governor, where it has been placed by the constitution. **[9]** One who attacks the constitutionality of such an enactment must not only overcome the strong presumption in favor of its validity, but he must show that by the natural and necessary import of the language it is clearly in conflict with the supreme law. If the language employed is capable of two or more constructions, any one of which is in harmony with the constitution, it is our duty to give it that construction (*People* v. *Hayne*, 83 Cal. 111 [17 Am. St. Rep. 211, 7 L. R. A. 348, 23 Pac. 1]).

There is now, and there has been for more than half a century, a statute in force in this state allowing credits to convicts which are deducted from their terms of imprisonment. These credits, shortening very materially the term of the sentence, are given not by the court, nor by the Governor under his power to commute or pardon, but purely and simply by administrative officers—the prison board. The validity of such legislation was upheld by the supreme court in *Ex parte Wadleigh*, 82 Cal. 518 [23 Pac. 190]. Says the supreme court: ''The statute provides in express terms that certain credits or deductions from the term of imprisonment imposed shall be allowed for good conduct. (Supplement to Deering's Codes, p. 490, sec. 20.) This statute does not require any action on the part of the governor, nor is any such action necessary. The statute, by its terms, entitled the prisoner to his discharge the same as if his term of imprisonment had expired without such commutation as he is allowed by its provision. The statute is not unconstitutional as an infringement of the power of the executive to pardon. It does not take away or interfere with such power in any way. The statute simply fixes the term of imprisonment in certain cases and upon certain

conditions. This provision enters into and becomes a part of the judgment of the court below.''

The power to pardon is something more than the power to release from servitude. Pardon is the remission of guilt, amnesty, oblivion, or forgetfulness (Anderson's Law Dictionary, 745). The act of the board only shortens the term provided by the sentence, and leaves the conviction of guilt unaffected. ''The effect of such pardon by the king is to make him, in effect, a new man; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtains a pardon, and· not so much restore his former as to give him a new credit and capacity.'' (Black-stone's Commentaries, Bk. 4, p. 402.) ''A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full, it releases the punishment, and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity.'' (*Ex parte Garland,* 4 Wall. (U. S.) 333, 380 [18 L. Ed. 366]; *United States* v. *Padelford,* 9 Wall. (U. S.) 531 [19 L. Ed. 788]; *United States* v. *Klein,* 13 Wall. (U. S.) 128 [20 L. Ed. 519]; *Carlisle* v. *United States,* 16 Wall. (U. S.) 147 [21 L. Ed. 426, see, also, Rose's U. S. Notes].)

Statutes similar in meaning to our indeterminate sentence law, and some of them in practically the same language, have been enacted in many of the states, and while the courts of last resort in a few of these states have declared the acts unconstitutional, like courts of a majority of them have upheld their validity. (*Wilson* v. *Commonwealth,* 141 Ky. 341 [132 S. W. 557]; *Murphy* v. *Commonwealth,* 172 Mass. 264 [70 Am. St. Rep. 266, 43 L. R. A. 154, 52 N. E. 505]; *Oliver* v. *Oliver,* 169 Mass. 592 [48 N. E. 843]; *Commonwealth* v. *Brown,* 167 Mass. 144 [45 N. E. 1]; *George* v. *People,* 167 Ill. 447 [47 N. E. 741]; *State* v. *Page,* 60 Kan. 664 [57 Pac. 514]; *People* v. *Warden of Sing Sing Prison,* 39 Misc. Rep. 113 [78 N. Y. Supp. 907]; *State* v. *Duff,* 144 Iowa, 142 [138 Am. St. Rep. 269, 24 L. R. A. (N. S.) 625,

122 N. W. 829] ; *People* v. *Madden,* 120 App. Div. 338 [105 N. Y. Supp. 554] ; *People* v. *Nowasky,* 254 Ill. 146 [98 N. E. 242] ; *Commonwealth* v. *Kalck,* 239 Pa. St. 533 [87 Atl. 61] ; *Miller* v. *State,* 149 Ind. 607 [40 L. R. A. 109, 49 N. E. 894].)

The contention that the statute is violative of the equal protection clause of the federal and state constitutions is untenable. In *People* v. *Finley,* 153 Cal. 59 [94 Pac. 248], the defendant, while undergoing a life sentence in the state prison, was indicted under section 246 of the Penal Code, tried, found guilty, and the death penalty imposed. The defendant on appeal advanced the proposition—first, that section 246 denied to him the equal protection of the law guaranteed by the fourteenth amendment; second, that it contravened the provisions of article I, section 11, of the constitution of the state. The supreme court said (153 Cal. 62 [94 Pac. 249]) : "This amendment (14th) means simply that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons, or other classes, in the same place and under like circumstances. (*Missouri* v. *Lewis,* 101 U. S. 22 [25 L. Ed. 989].) Paraphrasing the language of the supreme court of the United States in *Moore* v. *Missouri,* 159 U. S. 673, at 677, 678 [40 L. Ed. 301, 16 Sup. Ct. Rep. 179, see, also, Rose's U. S. Notes], we cannot perceive that appellant was denied the equal protection of the laws, for every other person in like case with him, and convicted as he has been, would be subjected to like punishment."

The further contention that the statute is obnoxious to article IV, section 25, subdivisions 2, 26, and 33, of the state constitution prohibiting local and special laws, is also without merit. "The distinction between a special and a general law may not be capable of being formulated in a definition which will be exhaustive of the subject and applicable to every case; and the question may be better determined upon a consideration of each particular case presented for its application by taking into view the purpose and character of the law as well as the individuals upon which it is to operate. The legislature, in its function of providing for the public welfare and the benefit of the entire people of the state, must determine the character of the laws which it will enact, and, except in so far as it is prohibited by the consti-

tution, should adapt these laws to the condition or necessities of different portions of the state or the different classes of its citizens. The constitution does not require that all the laws which the legislature shall pass shall have a uniform operation in every part of the state, nor does it prohibit legislation for different classes of citizens. The requirement that all laws of a general nature shall have a uniform operation and that the legislature shall not pass special laws upon certain subjects, still leaves open for determination whether any particular statute is a general or a special law. A law which operates only upon a class of individuals is none the less a general law, if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself in the matter covered by the law. . . . If the conditions of such a class are such as to require legislation which would be inappropriate or injurious to others, or such as to require the enactment of laws which, either in their mode of enforcement or the remedy they provide, are inapplicable to others than the designated class, laws enacted for that class are not special for the reason that they apply to all of the individuals within the conditions.'' (*People* v. *Central Pac. R. R. Co.*, 105 Cal. 576, 583 [38 Pac. 905, 906].)

The statute is general in its application, for it applies alike to all persons who have been convicted of a public offense punishable by imprisonment in the state prison, and it is general in its purpose, for it gives to all persons similarly situated equal opportunity to avail themselves of its benefits.

For the reasons given we are of the opinion that the indeterminate sentence law is not violative of the fourteenth amendment of the constitution of the United States, nor of article III, section 1; article VII, section 1; article I, sections 11 and 21; article IV, section 25, paragraphs second, twenty-sixth, and thirty-third of the California constitution.

The judgment and order are affirmed.

Tyler, P. J., and Needham, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 27, 1923.