[Crim. No. 4639. In Bank. Nov. 16, 1945.]

THE PEOPLE, Respondent, v. SAM WILLIAMS, Appellant.

No appearance for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SPENCE, J.—This is an automatic appeal from a judgment imposing the death penalty and two other penalties. Defendant is a negro inmate of the California State Prison at San Quentin, California. He is serving, and was serving at the time the alleged offenses were committed, an indeterminate sentence of from one year to life for second degree

robbery. He was charged by indictment with three offenses, to wit: (1) murder; (2) assault by a life prisoner in violation of section 4500 of the Penal Code; (3) assault with caustic chemical in violation of section 244 of the Penal Code. Edwards, also a negro inmate of San Quentin, came to his death as a result of the effect of a combination of lye and water upon his face and neck. The lye water is alleged to have been thrown upon Edwards by defendant. Defendant waived a jury. The court, sitting without a jury, found him guilty of the three offenses as charged. The degree of murder was fixed at first degree. Defendant was sentenced to life imprisonment on the murder charge; to the death penalty for assault by a life prisoner; and to the penalty prescribed by law for assault with caustic chemical.

The second count of the indictment and the sentence of death rest upon section 4500 of the Penal Code. That section provides as follows: "Every person undergoing a life sentence in a State prison of this State, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, is punishable with death."

 The prosecution placed upon the witness stand six inmates of the prison who were eyewitnesses. These witnesses testified substantially as follows: On the afternoon of September 29, 1944, a group of from 15 to 20 inmates, including Edwards, the deceased, were congregated outside the clothing department of the prison awaiting their respective turns to enter and obtain clothing. Edwards was standing close to the door and was engaged in conversation with the other men. Some of the prisoners testified that as they approached the clothing department they noticed defendant standing by an entrance gate. After the men congregated outside the door, defendant worked his way through the crowd and approached Edwards from the latter's side and rear. Defendant carried with him a small jar partly filled with liquid. Upon reaching the place where Edwards was standing, the defendant whirled Edwards around and threw the liquid in the general direction of his face. A large portion of the liquid fell upon Edwards but some of it splashed upon the others causing burns. One of the prisoners shouted "acid," and the men quickly scattered. Edwards fell to the ground in pain and was picked up later and taken to the prison

hospital. Defendant ran out through the gate, dropping the jar as he went. It still contained a small amount of liquid and was retrieved by a prisoner. A litmus paper test of the contents of the jar was later made by an inmate working in the prison hospital as a technician. He testified that the test indicated the presence of a strong alkaline solution.

A prison guard testified that on the afternoon of September 29, 1944, defendant rushed into the captain of the yard's office and stated that he had just thown some lye upon Edwards; that Edwards had threatened him with a knife on previous occasions; and that his own face was burned and he wished to go to the hospital.

Thomas C. Cheetham, executive secretary to the warden of San Quentin Prison, testified that he and the attorney who later prosecuted the case interviewed defendant on the day after the episode in which Edwards was injured. According to this witness, defendant, at that time, stated that he had shared with Edwards some funds, which defendant had received from relatives; that he had asked Edwards to repay him but that Edwards had kept avoiding him, and a quarrel had ensued; that he worked his way through the crowd and threw the lye; that he meant to do it and was glad he had done it; that Edwards had threatened him with a knife and told him to keep away; that he had obtained the lye at the furniture shop where he worked and that he had put it with some water in a jar, had placed a cover on the jar and had put it in a brown paper sack. Cheetham testified that defendant made his statements voluntarily and that no coercive measures were used. He stated that defendant requested an attorney toward the close of the conversation. It appears that after the conversation had progressed 30 or 40 minutes a reporter arrived, but defendant refused to talk further.

At the trial defendant denied stating that he threw lye or intended to do so or that he worked his way through a crowd to where Edwards was standing. He claimed that when he made the statement to Cheetham and the prosecuting attorney, the men stood on either side of him and kept after him to talk. He further testified that he obtained the lye in the furniture department; that he secured the lye for the purpose of taking it to his cell to wash his commode; that he mixed the lye with water and placed it in a jar; that it was necessary for him to pass by the clothing department

in order to get to his cell; that he did not intend to go into the clothing department; that he met Edwards as he was going by the clothing department; that Edwards asked him what he was carrying and when defendant replied ''lye,'' Edwards grabbed at the jar and the two tussled; and that defendant then raised his arm to throw the contents out of the jar but Edwards grabbed it and and the liquid fell upon Edwards and also upon defendant.

Defendant was represented by counsel in the trial court but no brief on appeal has been filed by or on behalf of defendant. In a letter from defendant's trial court counsel, it was stated that no brief would be filed ''as I am unable to raise any point which might be advantageous to my client or enlightening to the court.''

The evidence, summarized above, is clearly sufficient to support the conviction on all three counts and a review of the entire record fails to disclose any error which would warrant a reversal. ▉ Defendant was undergoing a sentence of from one year to life at the time of committing the alleged offenses. As the Adult Authority had not fixed the period of imprisonment, it is settled that at the time in question, defendant was undergoing a life sentence within the meaning of section 4500 of the Penal Code. (*In re Quinn,* 25 Cal.2d 799 [154 P.2d 875]; *People* v. *McNabb,* 3 Cal.2d 441, 444 [45 P.2d 334]; *In re Lee,* 177 Cal. 690 [171 P. 958].) In *People* v. *McNabb, supra,* a similar question was presented and it was held that as there was no maximum fixed by law in term of years, such a sentence is in effect a definite life term unless and until a lesser term of imprisonment is fixed in due course by proper authority.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.