[Crim. No. 4668. In Bank. Feb. 8, 1946.]

In re EARLE COWEN, on Habeas Corpus.

Elizabeth Cassidy for Petitioner.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioner, who is confined in the State Prison at Folsom, urges that his imprisonment is unlawful in that his term, with credits, has expired, and that the Adult Authority has exceeded its power by purporting to forfeit time credits earned by and allowed to petitioner and by redetermining the length of time of his imprisonment. We have concluded, for reasons hereinafter delineated, that petitioner is not unlawfully imprisoned and that the authority has not exceeded its power.

On May 19, 1930, petitioner was adjudged guilty, in action number 39224 in the Los Angeles Superior Court, of an attempt to commit robbery on December 21, 1929, and, in action number 39425 (count 1), of rape committed on November 27, 1929, and (count 2) of robbery of the first degree also committed on November 27, 1929. It was ordered that sentence on the robbery conviction run concurrently with sentence on the conviction of rape. It was found that petitioner had been previously convicted of a felony and had served a term of imprisonment therefor. (The minutes of a meeting of the Adult Authority held on June 22 and 23, 1944, mistakenly recite that it was found that petitioner had suffered two prior convictions of felony.)

Petitioner's term of imprisonment started on June 6, 1930. In 1933 the Board of Prison Terms and Paroles fixed the length of time of petitioner's imprisonment at 20 years each on the robbery and rape convictions, to run concurrently, and 5 years on the attempt conviction, to run consecutively. On May 1, 1944, the Adult Authority, successor to the Board of Prison Terms and Paroles, reaffirmed the board's determination. In June, 1944, the Adult Authority granted parole for the last ten months of petitioner's term. Petitioner was released on parole on October 11, 1944. He violated the terms of his parole. The Adult Authority suspended his parole on April 16, 1945. On June 8 or 11, 1945 (the record is uncertain), the Adult Authority ordered that petitioner's parole be revoked and that "the above listed prisoners [including petitioner] who have terms set at less than the maximum shall be considered as serving the maximum (with the exception of those violators whose maximum of an indeterminate

sentence is life; and who shall be considered as serving a sentence of 50 years) until further order of the Adult Authority.'' After hearing on July 16, 1945, the Adult Authority again ordered that petitioner's parole be revoked and further ordered that all credits earned or to be earned by him be forfeited.

Petitioner was notified on July 19, 1945, by the record clerk of respondent warden that his present discharge date is July 22, 2030. Petitioner alleges and respondent does not deny that the Adult Authority has refixed his term of imprisonment at a total of 70 years; i. e., at the maximum for rape (50 years, Pen. Code, § 264, which, as above noted, is also the period set for the indeterminate life term) plus the maximum for the attempt (20 years, Pen. Code, § 664). Respondent alleges that by the order of the Adult Authority made June 8 or 11, 1945, ''petitioner was re-sentenced to serve a term of fifty years''; apparently it is respondent's position that petitioner is presently confined as one ''whose maximum of an indeterminate sentence is life [for robbery of the first degree, Pen. Code, §§ 213, 671]; and who shall be considered as serving a sentence of 50 years.''

Petitioner contends that his original term of imprisonment, totalling 25 years, could not be changed; that the amendments of the Penal Code which have given the Adult Authority power to redetermine terms of imprisonment are, as to him, *ex post facto*. As will appear from the ensuing discussion and authorities, this contention cannot be sustained.

At the time the offenses here involved were committed section 1168 of the Penal Code (Stats. 1929, p. 1930) provided that ''The state board of prison directors shall determine after the expiration of the minimum term of imprisonment provided by law, except that in cases in which the minimum term of imprisonment is more than one year, the state board of prison directors may determine after the expiration of one year from and after the actual commencement of such imprisonment, what length of time, if any, such person shall be imprisoned. . . . The term of imprisonment so fixed . . . shall not thereafter be increased or diminished by said board for any reason whatsoever except as in this section provided.'' The only manner provided by which the board could diminish or increase the term, was the allowance or forfeiture of time credits.

In 1931 (before the length of petitioner's term was initially

fixed) section 1168 was amended (Stats. 1931, p. 1053) to provide that "In case any convicted person undergoing sentence in any of the state prisons commits any infraction of the rules and regulations of the prison board, . . . the board of prison directors may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, and make a new order determining such length of time not exceeding the maximum penalty provided by law for the offense for which he was convicted." This provision was made applicable to all prisoners serving sentence. The last quoted language was carried over into section 1168 (Stats. 1933, p. 2156) as it read at the time the prison board first fixed the term of petitioner's imprisonment at a total of 25 years.

Section 3020 of the Penal Code (Stats. 1941, p. 1110) now provides that "In the case of all persons heretofore or hereafter sentenced under the provisions of Section 1168 of this code, the board may determine and redetermine . . . what length of time, if any, such person shall be imprisoned. . . ."

The amendments which permit redetermination of the length of time of imprisonment do not make possible the imposition of a longer term than could have been imposed when the offenses were committed. Petitioner at the time he committed the crimes (and at the time the board fixed his term at a total of 25 years) had no vested right to have it fixed at that or any other period less than the maximum sentence provided by statute; i. e., life on the conviction of robbery (Pen. Code, §§ 213, 671), 50 years on the conviction of rape (Pen. Code, § 624), and 20 years on the conviction of attempted robbery (Pen. Code, § 664). (*In re Hicks* (1938), 28 Cal.App.2d 671, 673 [83 P.2d 73]; *cf. In re Nachnaber* (1928), 89 Cal.App. 530, 533 [265 P. 392], holding that an amendment which provided that a judge granting probation might, as a condition of probation, order the defendant imprisoned, was not *ex post facto* as applied to offenses committed prior to the date the amendment took effect; the court pointed out that the defendant at no time had a statuory right to be granted probation.) As was said in the Nachnaber case, " 'The real question to be framed is whether the person accused has been deprived of a substantial right by reason of the change.' (*People* v. *Edenburg*, 88 Cal.App. 558 [263 P. 857].) " Petitioner here has been deprived of no substantial right by the amendment of section 1168 of the Penal Code.

Petitioner contends that the term of imprisonment on the attempted robbery conviction ran concurrently with the terms of imprisonment on the rape and robbery convictions. This contention, too, must be rejected. In 1930, when petitioner was sentenced, section 669 of the Penal Code (Stats. 1927, p. 1056) provided, "When any person is convicted of two or more crimes the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be; provided, that in exceptional cases the judgment, in the discretion of the court, may direct that such terms of imprisonment, or any of them, shall run concurrently." Under the mandatory provisions of section 669 the sentence for attempted robbery ran consecutively, there having been no contrary direction of the trial court. (See *People* v. *Ferlin* (1928), 203 Cal. 587, 603 [265 P. 230]; *In re Crawford* (1930), 109 Cal.App. 33, 34 [292 P. 520].) *In re Radovich* (1943), 61 Cal.App.2d 177, 182 [142 P.2d 325], on which petitioner relies, concerns section 669 as amended in 1931 and is not applicable.

Although the order in which petitioner was convicted of the three offenses (sentences on all three of which were pronounced on May 19, 1930) does not appear, all parties assume that if the sentence for attempted robbery is not concurrent, then it follows the concurrent sentences for rape and robbery. This assumption seems to be made in the face of the fact that the attempted robbery charge bears a lower number in the Register of Actions than the other charges.

The action of the prison board in treating the sentence on the attempt conviction as running consecutively to the sentences on the rape and robbery convictions was upheld, against petitioner's contention "that the judgment on the charge of attempted robbery should run concurrently, he claiming that it is a legal absurdity to hold that he should serve such term consecutively to a life term," in *People* v. *Cowen* (1937), 20 Cal.App.2d 674, 675 [67 P.2d 737].

Petitioner next contends that the Adult Authority has no power to refix his term of imprisonment at any period exceeding 20 years, the maximum for attempted robbery, because before the Adult Authority made its orders forfeiting all credits and refixing the length of time of imprisonment the concurrent sentences for robbery and rape had been

finally satisfied. It is petitioner's position that, with credits, he fully served a term of 20 years and started serving another, separate term of 5 years, and only the latter can be refixed.

Under this view, whether we accept petitioner's or respondent's assertions (each unsupported by the record) as to the amount of good time earned and allowed, it appears that the 20-year concurrent terms would have expired on some date in 1942 and that on that date petitioner would have commenced serving his sentence for attempted robbery. But for the reasons hereafter stated we cannot agree with petitioner's contentions that the time of imprisonment for robbery and rape cannot be redetermined and that credits earned and allowed prior to 1942 cannot be forfeited.

If petitioner were confined under a sentence for a single offense, or concurrent sentences, or if the second of his consecutive sentences were void, then the holding of *In re Shull* (1944), 23 Cal.2d 745, 753 [146 P.2d 417], would apply: "once a prisoner has been allowed credits and by reason thereof his reduced term has expired, his term, as not reduced, may not thereafter be revived by a forfeiture of credits for conduct occurring after the expiration of his reduced term." But, respondent contends, for the purposes of computing and allowing credits, of forfeiting credits, and of redetermining the length of time of imprisonment, a prisoner confined under consecutive sentences must be regarded as undergoing a single, continuous term of confinement rather than a series of distinct, independent terms. With this contention we agree.

*In re Albori* (1933), 218 Cal. 34, 37 [21 P.2d 423], holds that under the then wording of section 1168 of the Penal Code time credits on consecutive sentences must be computed upon the total term of confinement rather than upon the separate terms. This holding as to the basis of computation of credits applies to petitioner's situation, for the provision of section 1168 construed in the Albori case is found in identical language in present section 2920 of the Penal Code. This conclusion is strengthened by the fact that the Legislature, apparently in recognition of the holding of the Albori case, added to section 2920 the limitation that "The phrase 'term of confinement' as used herein shall not in any case be construed to include sentences for crimes committed while under commitment to a State prison but in all such cases the credits shall be computed on the separate sentence resulting from such conviction."

We believe it would be inconsistent to say that a prisoner under consecutive sentences is regarded as undergoing one continuous term of confinement, rather than a series of distinct terms, for the purpose of earning credits, yet the same prisoner, when he commits an offense causing those same credits to be forfeited, is to be regarded as serving a series of distinct terms, the earlier ones of which have been completed and the sentences thereon expiated. The provisions of the Penal Code with reference to allowance and forfeiture of credits originated in a single section (§ 1168) and are now in a single article (Pt. 3, tit. 1, ch. 7, art. 2). The provisions of such article ''apply to all prisoners now serving sentence in the State prison, to the end that at all times the same provisions relating to credits shall apply to all the inmates thereof.'' (Pen. Code, § 2926.) The arrangement of the provisions in the code indicates a legislative desire for uniformity on the subjects of allowance and forfeiture of credits. Section 2923 of the Penal Code provides for the ''forfeiture of any or all time credits theretofore earned by or allowed to'' a prisoner; there is nothing in that section or elsewhere in the Penal Code provisions concerning credits to indicate that the Legislature meant to exempt from possible forfeiture statutory credits earned during the earlier portion of the ''entire term of confinement'' of a prisoner serving consecutive sentences.

The federal courts have reached the same conclusion as to forfeiture of credits. In considering a contention similar to that of petitioner, *Aderhold* v. *Perry* (1932; C.C.A. 5th), 59 F.2d 379, 380, holds, ''The credit is not a vested right, but only contingent until a time arrives such that its allowance will end imprisonment. . . . When the imprisonment covers several successive sentences, . . . the prisoner's service and his record of conduct are to be treated as a continuous whole. The number of days to be allowed as a credit is to be increased as though there were but one single sentence, and the chance of winning or losing the increased credit is to be similarly protracted.'' Likewise under our Penal Code it is only when the allowance of credits ''will end imprisonment''—when the time of confinement has extended to the prisoner's discharge date as accelerated by credits allowed (Pen. Code, § 2942)—that the reasoning of *In re Shull* (1944), *supra*, 23 Cal.2d 745, 753, applies. (In accord are *Ebeling* v. *Biddle* (1923; C.C.A. 8th), 291 F. 567, 568; *Morgan* v. *Ader-*

*hold* (1934; C.C.A. 5th), 73 F.2d 171, 172; *People* v. *Brophy* (1937), 250 App.Div. 831 [294 N.Y.S. 855]; *Moulthrop* v. *Walker* (1942), 129 Conn. 164, 168 [26 A.2d 789] (that the sentences in the Moulthrop case were consecutive, see *Abt* v. *Walker* (1940), 126 Conn. 218, 220 [10 A.2d 596]); *Sweetney* v. *Johnston* (1943; D.C., N.D.Cal., S.D.), 50 F.Supp. 326; *Tippitt* v. *Squier* (1944; C.C.A. 9th), 145 F.2d 211, 212; see 127 A.L.R. 1203, 1207, 1208, where it is said, "In a very few cases in which unsuccessful attempts have been made, upon the ground of forfeiture for misconduct after incarceration, to take away from prisoners good-time allowances which they had earned, the courts have taken the view that, at least under the particular circumstances, the right to, or privilege of obtaining, the allowances had fully accrued, and accordingly were not subject to withdrawal, modification, or denial, except as clearly authorized by statute. . . . But, in the great majority of cases involving forfeiture of good-time allowances for misconduct prior to termination of the sentence, the view has prevailed that the privilege of obtaining such allowances, being not a vested right, may properly be withdrawn, modified, or denied in the event of specific acts of misconduct, or perhaps misconduct generally, depending upon the wording of the statutory provisions in that regard.")

Under our law, as under the federal law, "Any other view would lead to absurd consequences, and nullify the results sought to be accomplished by the statute. This result is intended to be a reward for good behavior, tending to ease of administration, and making for the reform of the prisoner. If these allowances were applied as the several sentences expire, as appellant contends, then he would be entitled to them, provided he had conducted himself well during any term . . ., regardless of his behavior during any other term. . . ." (*Ebeling* v. *Biddle* (1923; C.C.A. 8th), *supra,* 291 F. 567, 568.)

Likewise, we believe, a prisoner serving consecutive sentences must be regarded as undergoing a single, continuous term of confinement thereunder for the purpose of redetermination by the Adult Authority of the length of time of his imprisonment. As in the case of the forfeiture of good time, any other result would nullify at least in part the results sought to be accomplished by the statute. Section 3021 of the Penal Code provides that "When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the board may determine and redetermine after the expiration

of six months of his first sentence, what length of time he shall serve on *all* such cumulative or consecutive sentences" (italics added) without any suggestion that by the passage of time (short of the ultimate end of the entire term) the authority of the board (now the Adult Authority) to redetermine the length of time under some of such cumulative sentences is lost. The word cumulative means "composed of accumulated parts; formed, or becoming larger, by . . . successive additions" (Webster's New Int. Dict., 2d ed.) and the use of such word by the Legislature in section 3021, apparently as a synonym for consecutive, suggests that the several sentences are to be regarded as a unit in administering the law.

Under petitioner's view there would exist grave possibilities of inequality of treatment of prisoners whose offenses and behavior have been identical. Such possibilities may be shown by an illustration. Defendant A is charged in count 1 of an information with rape (maximum, 50 years) and in count 2 thereof with attempted robbery (maximum, 20 years). He is convicted and sentenced on each count, sentences to run consecutively. In the ordinary course of things the foreman of the jury reads the verdict on count 1 first; the judge pronounces judgment on count 1 first; and the sentence on count 2 runs consecutively to that on count 1. (Pen. Code, § 669; see 24 C.J.S., p. 1243, § 1996, subd. g.) Defendant B is similarly charged, convicted, and sentenced, except that the order of the counts in the information, the reading of the verdicts, and the running of the sentences is reversed. A and B commence their terms of imprisonment; the Adult Authority duly fixes their respective terms at 10 years on the rape convictions and 5 years on the attempt convictions. They earn and are allowed all statutory credits until, after 3 years and 7 months of confinement have passed, each violates a prison rule. The authority refixes their sentences at the maximum—20 years in the case of A, 50 years in the case of B. Obviously the incentive to well-doing which it is a purpose of the indeterminate sentence law to afford (*In re Lee* (1918), 177 Cal. 690, 692 [171 P. 958]) is quite different in A's case than in the case of B, and the express legislative intent "that at all times the same provisions [of the indeterminate sentence law] relating to the imprisonment of prisoners shall apply to all the inmates" (Pen. Code, § 3025), is not given effect. In practical effect the construction of the

statutes urged by petitioner takes from the Adult Authority and gives to the district attorney a substantial portion of the power to determine a prisoner's discharge date.

We next consider certain objections voiced in the dissenting opinion in *Aderhold* v. *Perry* (1932; C.C.A. 5th), *supra,* 59 F.2d 379, to the conclusion reached by the Circuit Court of Appeals. Such objections are pertinent to our conclusion that, for the purposes of allowing and forfeiting credits and determining and redetermining the length of time of imprisonment, a prisoner in petitioner's situation is undergoing a single, aggregate term of confinement rather than a series of separate terms. Circuit Judge Hutcheson, dissenting, says (p. 381 of 59 F.2d), "The view which the majority takes not only runs counter to the words of the statute [18 U.S.C.A. § 710] . . . but, since the section allowing the aggregate of several sentences to be the basis of the good time applies generally to all sentences which the prisoner is serving, whether imposed by one or several courts, it gives the impossible effect to the statute of coalescing into one sentences which have no legal relation to each other. Besides, it introduces into cumulative sentences an element of uncertainty as to when one ends and the other begins which the law neither intends nor countenances."

The objection that the "coalescing into one" of "sentences which have no legal relation to each other," is "impossible," is not persuasive. In the case of a prisoner who is serving concurrent sentences for crimes committed on separate occasions, perhaps in separate counties, the sentences are similarly, and unobjectionably, "coalesced into one." And consecutive sentences, even if regarded as separate and distinct for some purposes, necessarily coalesce into one aggregate term of confinement during which the prisoner is continuingly restrained of his liberty.

The wording of section 669 of our Penal Code makes necessary a consideration of Judge Hutcheson's charge that treating the term of confinement under consecutive sentences as a whole amounts to rewriting the statute. Section 669 as it read in 1872 when the Penal Code (including such section) was enacted, as it read when petitioner was sentenced, and as it now reads, provides that a second consecutive term of imprisonment commences at the termination of the first term of imprisonment, and since 1927 (Stats. 1927, p. 1056) the section has referred to "terms of imprisonment," with no in-

dication that there could be a single term, the cumulation of consecutive sentences. But section 669 was enacted prior to the enactment of the indeterminate sentence law (Stats. 1917, p. 665). The purpose of the earlier section, we think, was to declare the power of the court to direct, or the rules to govern, the serving of multiple sentences only insofar as concerns whether such sentences should operate concurrently or cumulatively, not to require that for all purposes, when consecutive sentences are directed, the defendant shall be regarded as imprisoned on only one charge at a time. It should not be given the effect of circumscribing the operation of the later enacted indeterminate sentence plan.

This view is consistent with the holding in *People* v. *McNabb* (1935), 3 Cal.2d 441 [45 P.2d 334]. The essential facts in that case are that a prisoner while on parole under a sentence for a fixed term of years committed two first degree robberies. He was convicted of such offenses and returned to prison on commitments for such offenses as well as for violation of his parole. Prior to the completion of his original fixed term sentence and prior to action by the prison term authority on his last two sentences, he committed, with malice aforethought, an assault with a deadly weapon. It was held that he was subject to prosecution under section 246 (now § 4500) of the Penal Code. That section provides that "Every person.undergoing a life sentence in a State prison of this State, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon . . . is punishable with death." It was necessarily held that the defendant was "undergoing a life sentence" even though he had not yet completed his fixed term sentence. (See, also, *In re Quinn* (1945), 25 Cal.2d 799, 802 [154 P.2d 875]; *People* v. *Jones* (1936), 6 Cal.2d 554 [59 P.2d 89].)

Beginning in 1927 the Legislature has from time to time amended both section 669 of the Penal Code and the indeterminate sentence law. We must, therefore, decide whether the Legislature by such enactments intended that in the case of prisoners undergoing consecutive (more accurately, "cumulative") sentences the power of the Adult Authority in the exercise of its discretion to carry out the purposes of the indeterminate sentence law should be limited by a strict, literal application of the words of section 669. The general purposes of the indeterminate sentence law include reformation of the offender, protection of society from the offender who has not

reformed, and by express declaration uniformity of administration as to all prisoners undergoing confinement. (Pen. Code, §§ 2926, 3025.) We cannot believe that the Legislature intended that the administration of the law to effectuate these purposes should in the case of one class of prisoners be hindered merely in order that a prisoner of such class can serve "terms of imprisonment" as stated in section 669 rather than one "term of confinement" as stated in section 2920, or that such prisoner can know on any given date that he is spending that day in prison because he committed rape and that if he conducts himself properly during that day he will spend the next day in prison because he attempted to commit robbery.

The writ is discharged and the petitioner remanded.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.