[Crim. No. 5114. In Bank. Sept. 13, 1950.]

In re WESLEY ROBERT WELLS on Habeas Corpus.

C. K. Curtright, Philip C. Wilkins and Charles R. Garry for Petitioner.

No appearance for Respondent.

SCHAUER, J.—Wesley Robert Wells, who is confined in San Quentin State Prison under sentence of death, seeks habeas corpus on the grounds that execution of the sentence will deprive him of life without due process and violate other provisions of the federal and state Constitutions. We have concluded that his petition is devoid of merit.

The death penalty was imposed, pursuant to the mandate of the statute, upon Wells' conviction of violation of section 4500 of the Penal Code: "Every person undergoing a life sentence in a State prison . . . who, with malice aforethought,

commits an assault upon the person of another . . . by any means of force likely to produce great bodily injury, is punishable with death.'' The conviction was affirmed by this court on appeal (*People* v. *Wells* (1949), 33 Cal.2d 330 [202 P.2d 53]), and the United States Supreme Court denied certiorari (338 U.S. 836 [70 S.Ct. 43, 94 L.Ed. ——]). Wells had committed a nonfatal but violent battery on a prison guard while he was serving an indeterminate sentence of five years to no fixed maximum. No year-span limitation had been fixed by the Adult Authority; on the contrary the Authority had considered petitioner's case and, as pointed out in our opinion on the appeal (*People* v. *Wells* (1949), *supra*, p. 336 of 33 Cal.2d), had acted on the case ''by refraining from reducing such length of time [of imprisonment] to a term of years.'' ▆ Under the law of this state it is within the discretion of the Authority to either maintain such a sentence as a life sentence by refraining from remitting any portion of it, or to reduce such sentence to a fixed, or tentatively fixed, span of years. (See, e.g., *People* v. *McNabb* (1935), 3 Cal.2d 441, 456 [45 P.2d 334]; *People* v. *Jones* (1936), 6 Cal.2d 554, 556 [59 P.2d 89]; *People* v. *Ralph* (1944), 24 Cal.2d 575, 578 [150 P.2d 401]; *In re Quinn* (1945), 25 Cal.2d 799, 803 [154 P.2d 875]; *People* v. *Williams* (1945), 27 Cal.2d 216, 219 [163 P.2d 441]; *In re Cowen* (1946), 27 Cal.2d 637, 648 [166 P.2d 279].)

After affirmance of the judgment by this court and denial of certiorari by the Supreme Court of the United States, Wells sought habeas corpus in a United States District Court. The judge who heard the matter announced his view that ''By deliberate and designed inactivity, the administrative body known as the Adult Authority of California kept the petitioner in an indefinite and indeterminate status for the purpose of making it possible to impose the death penalty upon him in the event that he committed an offense under section 4500 of the California Penal Code. It must be concluded that this is not the kind of process that comports with 'the deepest notions of what is fair and right and just.' It may be appropriately characterized as 'overzealousness in an attempt to reach, through the criminal process (and indeed to destroy) those whom we may regard as undesirable citizens.' '' The district judge further declared that he reserved final ruling on the petition and ordered execution of the death penalty stayed ''in order to enable petitioner to pursue his state

remedies by petition for a writ of habeas corpus or other corrective process.''

The present petition for habeas corpus was filed pursuant to the above quoted suggestion. It presents the argument embodied in the views of the district judge as above quoted. Furthermore, petitioner contends, the trial court's erroneous exclusion of evidence as to Wells' state of mind, and the holding of this court that such error did not result in a miscarriage of justice, violated due process, equal protection, and deprived Wells of his right to jury trial of the issue whether he acted with ''malice aforethought''; and imposition of the death sentence is cruel and unusual punishment. It is to be noted that on his appeal Wells contended, among other things, that ''Section 4500 was never intended to apply to persons, such as he, serving an unfixed, indeterminate sentence for a maximum term of life imprisonment, and to apply it to him is to deprive him of equal protection of the laws in violation of the Fourteenth Amendment of the federal Constitution.'' (See page 334 of 33 Cal.2d.) However, in part, the precise contentions now advanced by petitioner were not, although they could have been, presented on his appeal.

The People of the State of California, through their Legislature, established the nondiscretionary punishment of death for the offense denounced by section 4500 of the Penal Code. (See *People* v. *Finley* (1908), 153 Cal. 59, 62 [94 P. 248] ; *Finley* v. *California* (1911), 222 U.S. 28, 31 [32 S.Ct. 13, 56 L.Ed 75].) Thereafter, the People, through their Legislature, gave to the Board of Prison Terms and Paroles, which agency by later legislation has become the Adult Authority, the power and duty to determine, within statutorily defined limits, the length of time of imprisonment of felons sentenced to a state prison on judgments not imposing the death penalty. (See *In re Lee* (1918), 177 Cal. 690, 693 [171 P. 958] ; *People* v. *Hale* (1923), 64 Cal.App. 523, 535 [222 P. 148] ; *In re Northcott* (1925), 71 Cal.App. 281, 284 [235 P. 458] ; *In re Collins* (1926), 198 Cal. 508, 509 [245 P. 1089] ; *People* v. *Stratton* (1934), 136 Cal.App. 201, 207 [28 P.2d 695].) As previously indicated it is well settled that the nondiscretionary death penalty applies to a felon who, while serving an indeterminate sentence with no fixed maximum term of years, commits an assault of the sort described in section 4500. (*People* v. *McNabb* (1935), *supra*, pp. 456-458 of 3 Cal.2d; see also *In re Quinn* (1945), *supra*, p. 800 of 25 Cal.2d; *People* v. *Williams* (1945), *supra*, p. 219 of 27 Cal.2d; *People* v. *Wells* (1949),

*supra,* p. 337 of 33 Cal.2d.)    As said in *People* v. *McNabb* (1935), *supra,* pp. 456-457, ''The authorities of this and many sister states which have an indeterminate sentence law similar to ours hold that a statute which prescribes . . . no maximum is in law a life sentence until and unless a court or executive board charged with the duty of fixing prison terms remits a portion of the life term.''

Here, as already stated, no portion of the prisoner's life term had been remitted but before petitioner committed the assault which resulted in the conviction now attacked, the Adult Authority had considered the matter of fixing his term and had declined to reduce it to a term- of years.    For the purpose of this opinion we accept the view, asserted by Wells in his petition and accepted by the district judge, that the Authority's action in refraining from fixing a term of years was intended to make, or to keep, petitioner a life-termer, under the holding of *People* v. *McNabb* (1935), *supra,* because petitioner was a dangerous, apparently incorrigible prisoner from whom acts of violence were anticipated.    It does not follow that the Authority's action was arbitrary, repugnant to traditional concepts of fairness, or designed to ''destroy'' petitioner.    The fact that Wells is a striking example of the failure of our penological system to reform a convicted person or to deter him from further acts of violence should not lead us to the unsound conclusion that the operation of that system was, in Wells' case, unconstitutional, or that the act of the Authority indicates malfeasance, misfeasance or nonfeasance. The Authority was dealing with a desperate and dangerous man (Wells had on separate previous occasions killed a fellow prisoner, severely injured another prisoner, committed a number of vicious assaults and batteries on guards and inmates, and wantonly destroyed state property).    The Authority was administering a system which combines the theory of reformation and the theory of punishment.    Such system has long (more than 30 years in California [*In re Lee* (1918), *supra,* 177 Cal. 690]) been accepted in this state and in many other states as constitutional, and is generally regarded as a modern and enlightened approach to those elements of the problems of penology with which it deals.    (See 15 Am.Jur., p. 169; 24 C.J.S., p. 1182.)    Unfortunately Wells, under that system, apparently did not become susceptible of reform or amenable to discipline.    With the knowledge and facilities available to the Authority, its action in refusing to reduce the

length of petitioner's imprisonment to a term of years was reasonable; indeed, it might well have concluded that the only reasonable course open to it was the stern (and, as it developed, ineffective) one of placing before petitioner the threat of even more severe punishment—the extreme penalty—should he continue his violent behavior.

[4] As to petitioner's contention that rulings of law by the trial court and this court deprived him of due process, it should first be noted that the solution of the question does not depend on the correctness of those rulings. (See *Howard* v. *Kentucky* (1906), 200 U.S. 164, 173 [26 S.Ct. 189, 50 L.Ed. 421]; *Paterno* v. *Lyons* (1948), 334 U.S. 314, 320 [68 S.Ct. 1044, 92 L.Ed. 1409].) It is petitioner's position that the exclusion of evidence of his state of mind, offered to show lack of "malice aforethought," deprived him of procedural due process by denying his right to present his defense. (See *Matter of Lambert* (1901), 134 Cal. 626, 633 [66 P. 851, 86 Am.St.Rep. 296, 55 L.R.A. 856].) The trial court's ruling was an error of law merely; there was no refusal to allow Wells to present a defense, but only a rejection of some evidence concerning the defense. Petitioner cites no authority, and we find neither authority nor reason, which suggests that the hearing requirement of due process is not satisfied by this court's appraisal of the effect of the erroneously excluded evidence. The contention that petitioner was denied due process by this court's holding (*People* v. *Wells* (1949), *supra*, pp. 357-358 of 33 Cal.2d) that "the rejection of the physician's proffered testimonies [as to Wells' state of mind at the time of the assault] did not result in a miscarriage of justice" is, in effect, a contention that this court, while carefully scrutinizing and sharply differing among some of the justices as to the effect of the error, ignored the most fundamental concepts of fairness and justice. We need refer only to the opinions on which our previous decision rested (the dissenting opinions as well as the majority opinion) to show that affirmance of the judgment of conviction was not wanting in due process.

The trial court did not discriminate against Wells in ruling on the admissibility of evidence, and this court did not discriminate against him in applying section 4½ of article VI of the state Constitution; therefore, there was no denial of equal protection. (See *Howard* v. *Kentucky* (1906), *supra*, p. 176 of 200 U.S.; *State* v. *Burke* (1928), 126 Ore. 651 [270 P. 756, 759], where defendant contended that application of provisions of the Oregon Constitution and statute similar to

article VI, section 4½, violated the Fourteenth Amendment; appeal dismissed on the ground that the asserted federal question was frivolous, 279 U.S. 811 [49 S.Ct. 262, 73 L.Ed. 971].)

It is true, as petitioner asserts, that he was entitled to a jury trial on the issues of fact raised by his plea of not guilty, including the question whether he acted with "malice aforethought." He was accorded such trial, and our decision did not retroactively deprive him of it. Petitioner is mistaken in his suggestion that the right of jury trial under the Constitution of this state includes the absolute right to have all relevant evidence before the jury in every case.

█ In support of his contention that imposition of the death penalty in the present situation is cruel and unusual punishment, petitioner cites only the Eighth Amendment of the United States Constitution[1] and section 6 of article I of the state Constitution, which forbid infliction of such punishment. In *People* v. *Oppenheimer* (1909), 156 Cal. 733, 737 [106 P. 74], imposition of the death penalty on a prisoner who committed a battery under circumstances materially similar to those here was upheld against the objection that it amounted to cruel and unusual punishment. We are convinced that that case was correctly decided. (See also *In re Finley* (1905), 1 Cal.App. 198, 203 [81 P. 1041].)

For the reasons above stated the application for the writ of habeas corpus is denied.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the conclusion that Wells, at the time he attacked the prison guard, was ". . . undergoing a life sentence in a State prison . . ." within the meaning of section 4500 of the Penal Code. The decisions of this court uniformly declare that a sentence for a minimum term of years is one for life unless and until reduced. The penal history of Wells conclusively shows that in refusing to remit any portion of his sentence, the Adult Authority committed no abuse of discretion but, on the contrary, exercised sound judgment.

However, the second ground of Wells' petition presents a question which, if more broadly stated, would require a reexamination of the evidence upon which he was convicted. He

---

[1] Infliction of barbarous punishment would not violate the Eighth Amendment; it might violate the Fourteenth. (See *Louisiana* v. *Resweber* (1947), 329 U.S. 459, 462, 463, 470 [67 S.Ct. 374, 91 L.Ed. 422].)

asserts that he was denied due process of law by the decision of this court upon rulings of the trial judge excluding testimony. I agree that upon the appeal from the judgment, the "appraisal of the effect of the erroneously excluded evidence" did not violate any constitutional guaranty. This answer meets the narrow issue tendered by the allegations of the petition but ignores the basic question which is stated in the points and authorities in support of Wells' demand for relief upon constitutional grounds.

In the petitioner's brief that question is presented as follows:

"A. Petitioner at his trial . . . was not allowed to present to the jury his only major defense; i.e., evidence regarding his state of mind and *intent* at the time of the alleged act;

"B. The matter of the intent with which an act is done is within the exclusive province of the jury." Strictly speaking, these charges are not pleaded as one of the formal grounds for habeas corpus. But unquestionably counsel is not basing his claim of lack of due process solely upon the action of this court in considering the evidence tendered at the trial. His argument challenges the rulings of the trial judge and is built upon the premise that intent is an essential element of the crime of which Wells was convicted.

Under such circumstances, and particularly with human life at stake, niceties of pleading should not be the decisive factor in this court's conclusions. Justice requires a determination of the question as to whether the exclusion of the evidence offered by Wells upon the trial violated constitutional guarantees. As to that question, I again state my conclusions concerning it as follows: "The refusal to admit such evidence allows one to be convicted of the crime defined by section 4500 of the Penal Code without proof of the requisite mental intent specified by the statute and constitutes a denial of due process of law . . ." and ". . . the ruling necessarily constitutes a miscarriage of justice within the meaning of section 4½ of Article VI of the Constitution." (*People* v. *Wells*, 33 Cal.2d 330, 359 [202 P.2d 53].)

For these reasons, in my opinion the writ of habeas corpus should issue.

Carter, J., and Traynor, J., concurred.